ROBERT MOORES & CO. *v.* BATES, BENSON & CO. et als.

A partnership in a contract for the building of railroads is an ordinary partnership, and the partners are liable only for their virile shares.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. Tried by a jury. *T. W. Collens, Logan Hunton, D. W. Hennen, J. B. Lyman* and *J. B. Cotton*, for plaintiffs. *George L. Bright* and *E. H. Durell*, for *T. C. Bates. J. S. Holt*, for *J. Clarke. M. M. Cohen* and *G. A. Breaux*, for Opelousas Railroad Company.

MERRICK, C. J. *Bates, Benson & Co.* were large contractors on the Opelousas and Great Western Railroad. The plaintiffs, *Moores & Dixon*, were sub-contractors.

The suit is brought to recover $6,584 80 of *Bates, Benson & Co.* and of the Opelousas and Great Western Railroad Company, on an attested account for that amount of money due by *Bates, Benson & Co.* for work done upon the road by plaintiffs.

*Two only of the firm of Bates, Benson & Co. are parties* to the suit, and final judgment was rendered in this case against them as "*Bates, Benson & Co.*" without regard to the non-joinder of the other three partners, in June, 1856, for $5005, from which they, the partners cited, have taken no appeal.

The answer of the Opelousas and Great Western Railroad Company was a general denial. Afterwards, when the case was called up for trial, the Railroad Company, as well as the two defendants cited, excepted to going into trial on account of the want of proper parties. The exception was overruled.

On the trial, the Opelousas and Great Western Railroad Company were condemned *in solido* with *Bates, Benson & Co.* (as just mentioned) to pay plaintiffs the said sum of money.

The Railroad Company alone has appealed.

The case has been defended by the appellant on the sole grounds that the work done by the plaintiffs did not amount to so much as allowed by the jury and that as only two of the partners of the firm of *Bates, Benson & Co.* were parties to the suit, the plaintiffs can only obtain judgment for two-fifths of whatever amount is really due.

On the first of these questions, we think that the estimates made by the engineer of the company during the progress of the work, and immediately

after the abandonment of the work by the plaintiffs, must, in the absence of all fraud, control the case. The engineers appear to have been selected by the parties as the judges of the work, and it was upon their estimates that they expected to be paid. See *McCord & Co.* v. *West Feliciana Railroad Company,* 3 An. 289, 290.

If the plaintiffs would set aside these estimates, they should show that they are fraudulent or, at least, that they are clearly erroneous.

The testimony in this case effects neither of these objects. Aside from the survey and location of the Railroad and of the plans and profiles made in conformity thereto, before any work was done upon the road, and which were made when no person had an interest to make false measurements, but on the contrary, when it was the interest of the engineer to attain the greatest exactness, it must be obvious, that measurements made by professional engineers, who have aided in laying out the work, and who visit the work during its progress, who know how much has been done previous to the commencement of the work by the contractor, and how much has been left undone, and who make their measurements in the presence of the parties, are much more likely to be accurate than measurments made by persons not familiar with such works, and long after the work has been completed by other persons than those for whom they make the measurement.

We do not think the testimony of plaintiffs' witnesses sufficient to destroy the estimates, sustained as they are by the testimony of the engineers and other competent persons who, from their superior means of knowledge, could scarcely be mistaken.

Giving proper weight to such testimony, we find that plaintiffs have done crib-work to the amount of 3,300 feet, which, at $2 per foot, is....$6,600 00

1,400 cross-ties, it is proven, were paid for and worked into crib-work, which leaves only 400 according to plaintiffs' proof......... 200 00

One half mile of clearing.................................... 375 00

Total.............. ................$7,175 00

The engineer in the estimate has deducted $1,742 45 for incomplete work. But at the rates agreed upon between *Bates, Benson & Co.* it would only be $1,161 64. Plaintiffs allow.......$1,200 00

Deduct payment.................................4,049 18–5,249 18

Balance...........................$1,925 82

This is a larger amount than the Railroad Company has retained to pay these parties.

This brings us to the question whether the plaintiffs can obtain judgment against the Railroad Company for any thing more than the shares of those partners who are parties to the suit.

It is well settled as a general rule of law, that all parties whose interests are to be affected by the decree, must be made parties to the suit. Here, it is evident that the other three partners were equally interested in defeating the plaintiffs' pretensions. If made parties, they would have the right to show that they had paid the plaintiffs, or that the work was not done by the plaintiffs, but by themselves.

6

MOORES
*v.*
BATES.

No judgment can, therefore, be pronounced in this case prejudicial to their rights. But partners in contracts for the building of railroads, are ordinary partners, and bound for their virile shares, and there is no reason why judgment should not be rendered in favor of the plaintiffs for two-fifths of one thousand nine hundred and twenty-five dollars and eighty-two cents. *McGhee* v. *McCord*, 14 La. 362.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court, be avoided and reversed as to the said Opelousas and Great Western Railroad Company; and now proceeding to pronounce such judgment as ought to have been pronounced in the court below: It is ordered, adjudged and decreed, that the said Opelousas and Great Western Railroad Company pay to said plaintiffs the sum of seven hundred and seventy dollars and eighty cents, and legal interest thereon from the 21st day of October, 1854, until paid, in discharge of so much of the sum of $1,715 77 in the hands of said Railroad Company, to the credit of said *Bates, Benson & Co.*, and reserving any right they may have to the other three-fifths of either of said sums, or of any other sum in an action to which there shall be proper parties. And it is further ordered, that the plaintiffs pay the costs of the appeal, and the defendant the costs of the lower court.

SPOFFORD, J., dissenting. It would seem from the authorities, that if the parties composing the firm of *Bates, Benson & Co.* are liable only as joint obligors, no judgment could be rendered against any of them till all were made parties. *McGee* v. *McCord*, 14 La. 362; *Thompson* v. *Chretien*, 3 Rob. 28; C. C. 2080; *Dougart* v. *Desaugle*, 10 Rob. 430. If, therefore, the Railroad Company, the only appellant, has a right to object to the judgment rendered against *Bates, Benson & Co.* for the want of proper parties, the logical consequence would be that it could demand a dismissal of the whole action as in case of non-suit.

But I am of the opinion that the Railroad Company has no right to interfere in the judgment, as between the plaintiffs and the firm of *Bates, Benson & Co.*, that firm having acquiesced in the judgment. It can only complain of the judgment rendered against itself on the ground of errors in the attested account of services rendered to the undertakers, *Bates, Benson & Co.*, by the plaintiffs, as sub-contractors. That attested account is the basis of the demand against the Railroad Company. To procure a judgment against the company, it was not essential for the sub-contractors to have a judgment against the undertakers. I think the plaintiffs are, therefore, entitled to a judgment against the Railroad Company for all their claims against *Bates, Benson & Co.* which are not shown to be erroneous.