FOURNET, Chief Justice.
The. plaintiff, Irven C. Sharmari, the “holder and owner of an $8,000 promissory note dated January 2, 1951, executed by the Alexandria Insulation Company, allegedly .a commercial partnership composed of William T. Clark and Mrs. Myrtle S. Phillips, having instituted suit against the partnership and its component members seeking judgment in solido against them for the principal of the note with interest and attorney fees, prosecutes this appeal from a judgment of the district court dated May .20, 1954, dismissing his suit as to Mrs. Phillips, defaults having been taken against the firm and Clark and judgment thereon rendered November 9, 1951, from which •there has been no appeal.
After her exceptions of vagueness and of no cause and no right of action had been referred to the merits, Mrs. Phillips. denied generally all of the allegations of the petition. She further averred (1) that William T. Clark conducted the Alexandria Insulation Company as its sole owner and was without any authority whatsoever to bind her on the note or on any other obligation, and (2) that the note was nothing more than evidence of a personal loan or gift by the plaintiff to his stepgrandson, William T. Clark, and she never received any benefit from the transaction.- In argument here she contended additionally that her only connection with the firm was that of a creditor,, she having loaned Clark large .sums at various times, totalling in all over $100,000.
The trial judge, in his written reasons for judgment, states the question'posed by the issues in the case to be: (1) Was the plaintiff the holder and owner of the note for a valuable consideration, (2) was the company a partnership composed of Clark and Mrs. Phillips, and (3) if so, was it a commercial or an ordinary partnership. Without deciding, he expressed the opinion that even though the first two issues were resolved in favor of the plaintiff, he still could not prevail since the evidence disclosed the company was an ordinary partnership, and he concluded that inasmuch as the plaintiff had failed to establish .the firm benefited from the loan, the suit, as to Mrs. Phillips, must be dismissed.
*563 Under the provisions of our LSA-Civil Code partnerships are either commercial or .ordinary. They are commercial when they are formed “For the purchase of any personal property and the sale thereof, either in the same state or changed by manufacture”, or “For buying or selling any personal property whatever, as factors or brokers.” Article 2825. All others are ordinary. Article 2826. Commercial partners are bound in solido for the debts of the partnership, but ordinary partners are not bound in solido, and “no one of them can bind his partners, unless they have given him power so to do, either specially or by the articles of partnership.” Article 2872. If the partnership benefited from the transaction, however, even ordinary partners are bound in solido on obligations incurred by their partners without their specific authorization. Article 2874.
The record reveals that in August of 1947, in order to buy out the interest of A. B. Chaudoir with whom Clark had been operating in partnership the Alexandria Insulation Company, Clark borrowed $2,-000 from Mrs. Phillips, and that he continued to operate the company alone for a time in Alexandria, Louisiana. On December 1, 1947, Clark, with Mrs. Phillips, executed a written agreement for the operation, as a partnership, of “an insulation business in the City of Baton Rouge, known and operated as the Baton Rouge Insulation Company,” in which instrument Clark was designated as the managing partner. Other provisions covered the distribution of the net profits by mutual consent of the partners according to their fixed interests of 40% owned by Mrs. Phillips and 60% by Clark. Shortly thereafter, on January 8, 1948, Clark and Mrs. Phillips entered into another written partnership agreement (which apparently superseded the agreement of December 1, 1947), covering the operation of insulation businesses in both Baton Rouge and Alexandria under the names of the Baton Rouge Insulation Company and the Alexandria Insulation Company respectively, the conditions thereof being as in the previous agreement with respect to percentage of ownership, distribution of profits, and designation of Clark as the managing partner.[1] Neither of these agreements, drawn up by Clark, were placed on record.[2] For her interest in the company under the original agreement, Mrs. Phillips paid $3,000, and for her interest under the agreement of January 8, 1949, she paid $15,000.
Some time during the latter part of 1949 the company expanded to engage in the general contracting business and because the indemnity company furnishing bond *565 for a construction job awarded the company was unwilling to accept the previous informal agreements as evidence of the partnership, Clark and Mrs. Phillips, on February 21, 1950, executed formal articles drawn up by an attorney reflecting the partnership status of the company. In these articles the ownership of the firm on the basis of 40% and 60% by Mrs. Phillips and Clark respectively, is affirmed, and it is provided that the partners participate in the profits and losses in that proportion. In this agreement is included the further provision that the “partnership shall engage in the business of general contracting, building, and construction work of all kinds, including the power to buy, sell, lease, borrow, mortgage and encumber movable and immovable property of every description, and to do and perform all things and acts usually and legally performed by partnerships in Louisiana.”
The record clearly shows that the note sued on was given for a valuable consideration, it having been executed and delivered to the plaintiff as a renewal of three notes previously executed by the company in his favor, two for $3,500 and the third for $1,000, as testified to by the plaintiff, in which testimony he is corroborated by Clark. There is no countervailing evidence. The record further shows that the first $3,500 note was represented by money advanced by the plaintiff to aid the company in meeting pay rolls following the award of the contract on the Tioga school job, and that the second $3,500 note reflected money advanced in 1950 when the funds of the company were tied up in court under the divorce action instituted by Clark’s wife. The $1,000 note represented money advanced to the company for the purchase of sheet rock when that commodity was scarce.
In answering the second question posed by the district judge we experience no difficulty in concluding that the firm was a partnership composed of the defendants Clark and Mrs. Phillips, and that it was under his management, as reflected by the three partnership agreements above referred to. A study and analysis of the evidence further shows, unmistakably, there is no merit to the defendant’s contention that the extent of her interest and participation in the affairs and activities of the firm was that of a creditor only. While it may be true that Mrs. Phillips did not openly hold herself out as partner by having her name appear on the letterheads and other supplies or material, the testimony of former employees establishes that she was at the offices almost daily in conferences with Clark, looking over the books, determining what bills were to be paid and when, and formulating the policies of the company with respect to its ability to handle additional contracts and business. Furthermore, the evidence discloses that during this period the firm drew some 64 checks, totalling over $30,000, payable to Mrs. Phillips, and, in addition, paid over $10,000' direct to hej mother. It is also apt to observe that she *567 did, on at least four different occasions, hold herself out as a partner to the firm’s 'creditors by joining with Clark in securing bank loans (ranging in amounts from $900 to $7,500), and, on one occasion, she obtained a bank loan in the company name on her own signature, without the concurrence of Clark.
Mrs. Phillips’ effort to establish that the above mentioned sums paid her by the company were to reimburse her for interest and principal on loans she had previously made to Clark personally, aggregating in all over $100,000, is not supported by any probative evidence. Testifying in this respect she stated she had the records necessary to substantiate such a claim, including notes, cancelled checks, and records of interest and principal payment. However, she failed to introduce these records in evidence; and, although the trustee in bankruptcy handling 1 the affairs of the firm produced in court all of the records in his hands covering its transactions, which was in response to a subpoena obtained by Mrs. Phillips, her counsel, on motion, released these records without the introduction of any of them and without explanation. The only exhibits introduced by her to corroborate this contention was a note in the amount of '$80,000 given her by Clark on February 12, 1951, and an accompanying letter in which he states that it represents “amounts owned you by me and not evidenced by notes ■ previously given” his explanation on the •witness stand being that he had given her the letter and the note as an accommodation. Moreover, this was given at a time when the. business was obviously in a failing condition, and his testimony as a whole throws-little light on this phase of the matter.. (Emphasis supplied.)
Mrs. Phillips, testifying in her own behalf, stated most positively that during 1947 and 1948 she had loaned Clark the sum of $36,135 and of this amount had been repaid only $3,451.29. As above pointed out,, her records to substantiate this claim were-not offered in evidence. The exhibits which she did introduce disclose that the only amounts given Clark was the $2,000 check of August, 1947, the $3,200 check given for her interest in the Baton Rouge company in. the fall of 1947, the $15,000 check paid for her interest in the Baton Rouge and Alexandria companies in January of 1948, a. $500 check given Clark bn December 20, 1947, and an undated receipt, covering $3,000 advanced to Clark for pay roll, which, was to be repaid in the amount of $3,075.
We now pass to the last and important issue in the case, i. e., whether the Alexandria Insulation Company was a commercial partnership. On this phase the evidence reveals that although the firm began as a dealer in and installer of insulation,, the general contracting business being undertaken later, there was carried on also, under retail dealer licenses, the business of purchasing and selling building materials,, such as lumber, brick, nails, paint, door and window frames,-, etc., both new and secondhand, and that for this purpose two- *569 warehouses, a sales force, and an inventory or supply clerk were retained, and that, additionally, the company regularly paid sales taxes levied on the items sold over the counter. All of the firm’s affairs were conducted from the same office, under the same management, as one business. In other words, no effort to maintain the commercial and non-commercial operations separately was made.
We therefore conclude that under the jurisprudence and law of this state the defendant company was a commercial partnership composed of Clark and Mrs. Phillips and that she is, therefore, liable in solido with the other defendants on the Sharman obligation. Southern Coal Co., Inc., v. Sundberry & Winkler, 158 La. 386, 104 So. 124.
For the reasons assigned, the judgment of the lower court dismissing the plaintiff’s suit against Mrs. Myrtle S. Phillips is annulled and set aside; and it is now ordered, adjudged, and decreed that the plaintiff do have and recover judgment against Mrs. Myrtle S. Phillips in solido with the Alexandria Insulation Company and W. T. Clark for the full and true sum of $8,000, with interest at 8% from January 2, 1951, until paid, plus 10% of the principal and interest as attorney fees. All costs up to the confirmation of the default judgment on November 9, 1951, are to be borne by the defendants in solido; all costs incurred thereafter in the lower court and in this court are to be paid by the defendant Mrs. Myrtle S. Phillips.

. There is no further information in the record with respect to the Baton Rouge firm.

. It is Clark’s testimony that Mrs. Phillips desired to be a “silent” partner and, for this reason, he, in operating the firm as the managing partner, termed himself on various occasions as the owner of the Alexandria Insulation Company, or as William T. Clark, d/b/a the Alexandria Insulation Company.