123 So.2d 68

Rufus Frank DARDEN

v.

Ross E. COX.

No. 44237.

May 31, 1960.

Rehearing Denied Oct. 5, 1960.

Laycock & Stewart, Baton Rouge, for plaintiff-appellant.

Kantrow, Spaht, West & Kleinpeter, Baton Rouge, for appellee.

McCALEB, Justice.

This is a suit for a partition of an alleged partnership, known as Hall and Cox Construction Company, in which plaintiff, Rufus Darden, claims a thirty percent interest. Defendant admits that Darden was a partner with him in Hall and Cox Construction Company, but contends that Darden was only to participate in 30% of the profits or losses, and was to have no interest in the physical assets of the partnership.

The district court did not decide whether or not a partnership actually existed, but held that " * * * the agreement and intention of the parties was that plaintiff would receive thirty per cent of the net profits of the business * * * " and " * * * that plaintiff owns no interest in the property of the so-called partnership, and, for that reason, is not entitled to a partition of such property." The judge further concluded that, while plaintiff is entitled to his agreed upon share of the profits, he cannot be granted such relief in this action because he sought only a partition and did not alternatively pray for an accounting. Plaintiff has appealed.

The facts of the case are as follows: In 1948 Thomas E. Hall and defendant formed the partnership, known as Hall and Cox Construction Company, each partner owning a one-half interest therein. In 1950 plaintiff became an employee of the partnership, receiving a weekly salary, plus a certain percentage of the net profits as a bonus which was to be paid at the end of each fiscal year. In April, 1951 Hall became anxious to end the partnership, but it was determined that, if Hall left the partnership at that time, an extremely large income tax liability would result, unless Cox could, by some means, preserve the partnership's existence. Defendant's attorney advised him that the profit sharing agreement which he had with plaintiff was sufficient to maintain the existence of the partnership and, on April 18, 1951, defendant informed plaintiff that the latter was a partner in the business. Then defendant bought out Hall's interest in the partnership for $44,475, this being the approximate balance in Hall's partnership capital account as of January 31, 1951, the close of the partnership's fiscal year.

Plaintiff and defendant continued to work together in the business, with defendant as managing partner, handling most of the finances and making most of the big transactions for the firm. Plaintiff no longer received a salary but, instead, a capital account was set up for him on the books of the company which was adjusted as withdrawals or deposits were made by plaintiff and, at the end of every fiscal year, plaintiff's capital account was credited with 30% of the year's profits or debited with 30% of the year's losses.

In June, 1955 plaintiff became suspicious that some of the business transactions which defendant was making were not in the best interests of the partnership and, after looking through the company's records and consulting his attorney, plaintiff wrote a letter to defendant on October 29, 1955 asking for an audit of the company's books. Plaintiff and defendant then negotiated through their attorneys and, on December 8, 1955, an agreement was reached to place the company in liquidation as of October 31, 1955. Defendant was named as liquidator in this instrument.

The liquidation agreement set out a number of details on how the company's construction jobs which were then in progress should be continued and how the profits or losses from those jobs should be apportioned between the parties. It specified that at the conclusion of each job the Liquidator was to give a summary accounting showing only the total material and labor costs of that job, and the incidental costs not including overhead. Then, if Darden was not satisfied with such accounting, any resulting dispute was to be submitted to a certain named amicable compounder. The agreement also provided for winding up the firm's affairs as follows:

"Upon the completion and final payment by the owner of the last completed Hall and Cox Construction Company job bearing any of the following Job Numbers, to-wit: 503, 510 or 511, there shall be a settlement between the parties of their accounts with each other, with Hall and Cox Construction Company and with Louisiana Building Materials Co., Inc., to that date. At that time there shall be set up a reserve equal to the amount, and for the period of time, customarily set up by Hall and Cox Construction Company in the past, to cover 'go backs', completions, and maintenance of work."

\*　\*　\*　\*　\*　\*

"Any unused remainder of this reserve shall be distributed to the parties hereto in the proportion of seventy per cent (70%) to Ross E. Cox and thirty per cent (30%) to R. Frank Darden, upon the expiration of one year from the date of such settlement, or shall be applied toward the liquidation of indebtednesses of either of the parties hereto to the other, if any such indebtedness shall then be unliquidated."

It appears that defendant, in accordance with the agreement, submitted a summary accounting at the conclusion of each job, and that plaintiff was satisfied with each one. As a consequence, the necessity for using the amicable compounder was eliminated. On September 21, 1956, defendant submitted to plaintiff a "statement for partial settlement", purportedly in compliance with the paragraph quoted above, in which he set out what he considered the net profits derived from the jobs listed in the liquidation agreement, and the reserves necessary to be retained by him to meet certain possible listed contingencies. Since the reserve to be retained amounted to more than the profits to be distributed, defendant concluded that, until the contingencies were settled, there was nothing currently payable to plaintiff. On December 3, 1956, plaintiff finally acknowledged by letter that he had received the "statement for partial settlement", but refused to acquiesce in defendant's findings. Instead, plaintiff attempted to revoke defendant's authority as liquidator of the partnership and, on December 7, 1956, filed this suit for the partnership partition.

At the outset it is necessary to determine whether there was a partnership between the parties. If a partnership did exist, there can be no doubt that once the partners had agreed to bring their relationship to an end, plaintiff was entitled to have a partition of the firm's assets.[1] Since the parties had already agreed to terminate

---

1. Article 2890 of the Civil Code provides that "The rules concerning the partition of successions, the manner of making such partition, and the obligations which result from the same, between heirs, apply to partners."

their relationship as of October 31, 1951, there was obviously no need for a suit for dissolution. Hence, the only subject for litigation was the liquidation or partition[2] of the partnership assets.

 The Civil Code and the jurisprudence set out several things which are necessary to a business relationship before it can be considered a partnership as between the parties to it. First, the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them. Arts. 2801, 2805 of the Civil Code; Labat v. Labat, 232 La. 627, 95 So.2d 129. Secondly, all parties must share in the losses as well as the profits of the venture. Art. 2814 of the Civil Code; Amacker v. Kent, 144 La. 545, 80 So. 717. Thirdly, the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest. Art. 2808 of the Civil Code; Belden v. Read & Hunt, 27 La.Ann. 103; Chaffraix & Agard v. Lafitte & Co., 30 La.Ann. 631; Shushan Bros. & Co. v. Drennan & Hillcoat, 158 La. 480, 104 So. 214. Even if the parties call their relationship a partnership, and agree that they gave their mutual consent to form it, it will not be considered a partnership, as between the parties, unless it is evident that the other two factors result from their agreement. In the case of Amacker v. Kent, supra [144 La. 545, 80 So. 720], this Court held on this subject as follows:

> "If it be found that they have agreed upon all those matters which, in law, constitute a contract of partnership, it must be presumed that they intended that contract. If, on the other hand, some essential element to that contract is omitted, it is not a contract of partnership, no matter what it may be called."

It is clear that the parties in the case at bar intended to form a partnership, and that they mutually consented to create that type of relationship. There is also no dispute over the fact that all parties shared the losses as well as the profits of the enterprise.

However, defendant contends that his verbal agreement with plaintiff was to form a "limited partnership" in which the former would own all of the physical assets and the latter would only share in the profits or losses to the extent of 30%, to be calculated at the end of every fiscal year. Plaintiff asserts, on the other hand, that ownership

---

**2.** There is no essential difference between liquidation and partition of a partnership. Tippett and Husband v. Jett, 3 Rob. 313; Gridley v. Conner, 2 La.Ann. 87. Partition is accomplished by certain steps set out in the Civil Code (Art. 1289 et seq.), and it is the method used when partners cannot agree among themselves on how to liquidate the partnership. (Arts. 1290, 1323 et seq.)

of the physical assets was never discussed and that his understanding was that he would have his proprietary interest in them as any other partner would.

■ The relationship which defendant claims he had with plaintiff could not be considered a "limited partnership" in the generic sense of those words. A "limited partnership" under the common law refers to a situation where one partner invests a certain sum of money in the enterprise but takes no part in its management, his liability for partnership losses thus being "limited" to the amount he has invested (Crane on Partnerships, 2d Ed. 1952, Sec. 26). In Louisiana this type of relationship is known as a "partnership in commendam". The relationship in the case at bar is just the opposite of a "limited partnership" and cannot be assimilated with that type of partnership as defined by Article 2839 of the Civil Code.

The Civil Code does allow a partner to put "certain specified" property into the partnership for the partnership's *use* only, and the ownership of such property remains in the partner who brought it in (Art. 2863 of the Civil Code). But this could not have been the case here because defendant did not have any of his own property in the partnership when Darden was made a part-ner. It must be remembered that the partnership of Hall and Cox Construction Company was never dissolved and re-formed as Cox and Darden. Plaintiff was taken in as a partner just prior to defendant's purchase of Hall's interest for the admitted purpose of preventing the partnership's dissolution by Hall's withdrawal. Therefore, since all of the assets of the partnership entity were owned by it, and not by the individual part-ners,[3] prior to April 18, 1951, when plaintiff was made a partner, the partnership entity continued to own those assets after that date also. Hence, the question for decision is whether the parties intended that plaintiff was to have a proprietary interest in the assets owned by the partnership entity and thus can be considered a partner.

Since no formal articles of copartnership were executed by the parties, and the intention of their verbal agreement as to plaintiff's interest or lack of interest in the physical assets of the company is doubtful, we must look to the articles of the Civil Code which govern the interpretation of agreements for guidance in determining the true nature of the contract.[4]

Article 1956 reads as follows:

"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been

---

3. Defendant's testimony shows that the partnership entity owned all of the part-nership assets during the time that Cox and Hall were the sole partners.

4. Article 2803 of the Code provides that the rules governing conventional obliga-tions regulate partnership agreements.

executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."

Article 1957 declares:

"In a doubtful case the agreement is interpreted against him who has contracted the obligation."

And Article 1958 says:

"But if the doubt or obscurity arise for the want of necessary explanation which one of the parties ought to have given, or from any other negligence or fault of his, the construction most favorable to the other party shall be adopted, whether he be obligor or obligee."

■■■ Defendant testified that he told plaintiff "that he would be made a partner insofar as profits and losses was concerned", and that plaintiff showed no dissatisfaction with the arrangement. If defendant's statement was the extent of the partnership agreement, it is obvious that such agreement was obscure and did not necessarily convey the idea that plaintiff was to have no interest in the physical assets of the partnership. As this obscurity arises from want of necessary explanation which defendant ought to have made, the construction of the agreement which is most favorable to the plaintiff should be adopted. And, when the actions of defendant subsequent to the partnership agree-

ment are considered, it becomes even more apparent that he really intended that plaintiff should have a proprietary interest in the partnership assets. However, before adverting to those actions, it is essential to refer briefly to the type of partnership accounting used by the parties in this case so that the transactions referred to hereafter may be completely understood.

The assets of the partnership as listed on the credit side of its balance sheet were offset on the debit side of the sheet by its liabilities and net worth. The net worth was composed of the capital accounts of the various partners. Those capital accounts did not represent a certain amount of money that had been set aside for the partners, but merely denoted the extent of the partners' ownership of all the assets, after a deduction had been made in the amount of the partnership's liabilities. The partners drew at will from the cash which the partnership had on hand, and their capital accounts were debited accordingly. Thus, if a partner who had a $30,000 balance in his capital account drew $10,000 out of the partnership at a time when it had only $10,000 in cash, he was left with a capital balance of $20,000 which must necessarily have shown that he had a $20,000 interest in the remaining physical assets of the company. When the partners invested cash or other assets in the partnership, their capital accounts were credited with the value of the investment, and the assets of the

company were increased by a corresponding sum.

When a partnership such as the one here in question is liquidated, one of the first steps, in the absence of an agreement to the contrary, is to turn all assets into cash. If assets are sold for more or less than their book value, the profit or loss is reflected in the partners' capital accounts in the usual ratio. Then the liabilities are all paid, and the partners receive whatever amounts are shown by their capital accounts to be due them. Unless they stipulate otherwise, the partners do not divide the assets in the same ratio as they share profits and losses because one partner, previous to the day the partnership is dissolved, may have drawn out of the partnership or invested in it, a much larger share of capital than the other.

As already stated, plaintiff no longer received a salary after April 18, 1951 but, instead, a partner's capital account was set up for him on the books of the firm. Thereafter, plaintiff drew various amounts of money from the business at will, and his capital account was properly debited. For the first nine months during which plaintiff was a partner, he put no money into the company, and thus accrued a debit balance in his capital account. However, at the end of fiscal 1951, plaintiff invested $17,400 in the business [5] and at the same time was

credited in the capital account with his share of the profits for the year. Then, from that time until well into 1955, plaintiff maintained a credit balance in this account, mostly by means of the credit for 30% of the profits which were entered in the account on January 31 of 1952, 1953 and 1954. .

These facts clearly show that plaintiff had a proprietary interest in the partnership assets which the defendant fully recognized by allowing plaintiff to withdraw cash from the assets, permitting plaintiff's cash investments to be commingled with the other partnership assets and letting plaintiff's share of the yearly profits remain in the business without setting them aside in a separate drawing account. This last is aptly illustrated by certain figures in the partnership's January 31, 1954 balance sheet which show that, on that date, the balance in plaintiff's capital account was $31,810.21, while cash on hand amounted to only $9,449.07. Obviously, $22,361.14 of plaintiff's interest in the company on that date was tied up in partnership assets other than cash.

Defendant's counsel contend that there are certain facts which plainly exhibit that plaintiff was never intended to have an interest in the partnership assets. Counsel point out that defendant bought and paid

---

**5.** Plaintiff obtained $13,000 of this amount as a loan from his brother-in-law, and it appears that plaintiff withdrew $13,- 000 from the partnership three months later in order to repay the loan.

for Hall's one-half interest in the partnership, while plaintiff never made any contribution to the capital of the partnership, " * * * except such part of his earnings as he left on deposit, with the possible exception of two occasions"; that defendant " * * * borrowed hundreds of thousands of dollars from the banks and signed the notes individually, without even asking or suggesting to Mr. Darden that he should likewise obligate himself", and that "He made application continuously for performance bonds for millions of dollars, and again obligated himself personally on these obligations".

We find little substance in counsel's contention. The circumstance that plaintiff did not contribute to the capital of the partnership at the time he was invited by defendant to become a partner, does not establish that the parties intended that plaintiff was never to have an interest in the partnership's assets. The Civil Code does not require that all partners make an investment of cash in the partnership at any time. (Arts. 2801, 2809). However, it does allow the partners to keep profits undivided for the benefit of the partnership as partnership stock (Art. 2808). The record shows that the profits were allowed to remain in the business and were not divided until the end of the fiscal year. Even at that time the division amounted to nothing more than a bookkeeping entry, for the partners allowed much of their profits to remain in the business during the following year. Therefore, it is obvious that plaintiff built up an interest in the partnership assets, as we have previously shown, and the facts that he left his earnings "on deposit" and contributed capital on two occasions are even more evidence of that interest.

■ Nor does the fact that defendant obligated himself individually on loans and bonds have any material bearing on whether plaintiff was a partner or had an interest in the partnership assets. Since the firm was engaged in the business of construction work, it must be classified as an ordinary and particular partnership. Arts. 2826, 2835 of the Civil Code; Robert Moores & Co. v Bates, Benson & Co., 13 La.Ann. 40; National Oil Works v. Korn Bros., 164 La. 800, 114 So. 659; Sharman v. Phillips, 228 La. 560, 83 So.2d 127; Harding v. Wattigney, La.App., 62 So.2d 190. There were no written articles of copartnership but defendant, in assuming the role of managing partner and in obtaining loans and bonds for the partnership, not only bound himself individually, but also bound plaintiff at least for his share of liability on those obligations whenever they benefited the firm. Art. 2874, Civil Code. Lagan & Mackinson v. Cragin, 27 La.Ann. 352. If the loans and bonds were made to defendant alone, and the partnership was not benefited by them, their existence would not be pertinent to this lawsuit, unless de-

fendant invested the proceeds of the loans in the partnership. If this is what he did, he should have received credit for the investment in his capital account so that it would reflect his increased equity in the business. However, an investment of this nature by defendant would not be any proof that plaintiff did not also have his own interest in partnership assets.

■ Since we find that plaintiff did have a proprietary interest in the assets of Hall and Cox Construction Company and that the parties intended to continue that legal entity as a partnership after Hall's withdrawal therefrom, we conclude that a valid partnership existed, which was terminated by mutual consent. Hence, it follows that plaintiff is entitled to a judicial partition of the partnership assets, as prescribed by the Articles of the Civil Code, which we have cited above. Implicit in such proceedings is a full liquidation and settlement of the partnership affairs. Heirs of King v. Wartelle, 14 La.Ann. 740.

■ Defendant claims that the partnership has already been liquidated by him under the liquidation agreement to which reference has been previously made. However, it is obvious from the record that there are innumerable partnership matters yet in dispute which were not settled by the liquidator and, under such circumstances, a partner is entitled to sue for complete liquidation. Thompson v. Walker, 40 La.Ann.

676, 4 So. 881. This Court will not pass on the numerous issues left unsettled by the district court, and the case must be remanded for a determination of amounts in which plaintiff and defendant are debtor or creditor of the partnership and for a final settlement of the partnership affairs. Crottes v. Frigerio, 18 La.Ann. 283; Jeffries v. Moore, 219 La. 692, 53 So.2d 898.

In this connection we note that counsel for plaintiff have requested in oral argument and brief that we should pass on the many issues presented by them referring to the accounting due by defendant of his voluntary, but apparently incomplete, liquidation of the partnership as well as the settlement of the accounts between the partners.

This request, we think, fails to take into consideration the fact that the trial judge, in denying plaintiff's primary demand for a partition of the partnership, of which a final accounting and settlement is an indispensable concomitant, could not pass upon any of the other issues which plaintiff would now have us decide. Indeed, from a practical aspect, the action taken by the judge herein was akin to the maintenance of an exception of no cause of action. Therefore, he has not had an opportunity to pass on the issues pertaining to accounting and settlement. In these circumstances, we believe that the case should be remanded for disposal of all issues at one time in a judg-

ment of final settlement of the partnership. Leave is given to both parties to introduce further evidence in support of their respective contentions.

For the foregoing reasons, the judgment appealed from is reversed and the case is remanded to the trial court for further proceedings consistent with the views herein expressed. Costs of this appeal are to be paid by defendant; taxation of other costs is deferred until final disposition of the case.

123 So.2d 76