DOMENGEAUX, Judge.
. This is a suit for an accounting and partition of an alleged partnership formerly existing between the plaintiff Dr. Lehrue Stevens, Jr. and the defendant Dr. Avery L. Cook, and which was entered into for the medical practice of pathology, on August 24, 1964. From an adverse judgment, plaintiff has appealed.
The substantial issues are:
1) Did a partnership exist under the written agreement between the parties ?
2) Under the agreement, is plaintiff entitled to one-half of the accounts receivable but uncollected on the date the agreement was terminated?
The general facts show that prior to 1964, Dr. Cook was engaged in the practice of pathology in the City of Lake Charles. He owned a laboratory named “Oak Park Clinical Laboratory” and served as the doctor of pathology at Lake Charles Memorial Hospital and Lake Charles Charity Hospital as well as at other hospitals in the surrounding area. Dr. Stevens, who had been practicing only a short time, moved to Lake Charles and entered into the aforementioned written agreement with Dr. Cook.
The agreement provides in pertinent part as follows:
“State of Louisiana:
Parish of Calcasieu:
“This agreement is entered into between AVERY L. COOK, M.D. (hereinafter sometimes . referred to as ‘Cook’) and LEHRUE STEVENS, JR., M.D. (hereinafter sometimes referred to as ‘Stevens’), as follows, to-wit:
“WITNESSETH
“Cook is. presently engaged in the practice of pathology with offices in Lake Charles, Louisiana. Cook’s practice consists of (1) the operation of a pathology *800 laboratory under the name, ‘Oak Park Clinical Laboratory’; (2) serving as pathologist and director of the department of pathology at both Lake Charles Memorial Hospital and Lake Charles Charity Hospital; and (3) serving as part-time pathologist for hospitals other than those in Lake Charles. In addition to building up this going practice, Cook has accumulated assets, including but not limited to books and equipment, which he uses in his practice.
“Stevens, heretofore a practicing pathologist in Little Rock, Arkansas, has consented to join Cook here in Lake Charles on Oct. 1, 1964 for the purpose of forming a partnership for the practice of pathology under the firm name of ‘Cook and Stevens,’ and under the following articles of partnership:
“ARTICLE I.
“PARTNERS’ INITIAL CONTRIBUTIONS TO THE PARTNERSHIP”
“A. Cook will contribute to the partnership the use, but not the ownership, of his present practice of pathology, and the use, but not the ownership, of those of his fixed assets used in his practice which are presently located at Oak Park Clinical Laboratory.
“In addition, Cook will contribute all of his working time to the practice of pathology under the terms of this agreement, and will perform, as nearly as is feasible, fifty percent of the work of the partnership.
“B. Stevens will contribute all of his working time to the practice of pathology under the terms of this agreement, and will perform, as nearly as is feasible, fifty percent of the work of the partnership.
“ARTICLE II.
“SHARES OF EACH PARTNER IN PROFITS AND LOSSES”
“A. During the period from 10/1/64 through 9/30/65, Cook’s share of the net profits and losses of the partnership shall be seventy percent, and Stevens’ share of such profits and losses shall be thirty percent;
“B. During the period from 10/1/65 through 9/30/66, Cook’s share of such profits and losses shall be 63.32 percent, and Stevens’ share shall be 36.68 percent;
“C. During the period from 10/1/66 through 9/30/67, Cook’s share of such profits and losses shall be 56.68 percent, and Stevens’ share shall be 43.32 percent ; and
“D. Beginning 10/1/67, and continuing thereafter unless this agreement is terminated, Cook and Stevens will share such profits and losses equally.
“E. If at any time subsequent to the signing of this partnership agreement, Cook should sell to Stevens a percentage of Cook’s assets and equipment in the Oak Park Clinical Laboratory, then in that event, Stevens will be entitled to receive that percentage of the net profits of the partnership computed after excluding the income from Lake Charles Memorial Hospital and from Lake Charles Charity Hospital, which is equal to his actual percentage of ownership. For example, if on 1/1/65 Stevens were to offer Cook $5,000.00, and if this price were accepted by Cook, for a fifty percent interest in the assets and equipment presently in the Oak Park Clinical Laboratory, then Stevens’ share of the net profits would be computed as follows: Instead of being comingled with the income of the Laboratory, the net fees paid to Cook as Director and Pathologist for Lake Charles Memorial Hospital and for Lake Charles Charity Hospital would be treated as separate items of income. Nothing would be deducted from those items of income, and Stevens would receive thirty percent of that income while Cook would receive seventy percent. The income from all of the other practice of the partnership would be totalled, and from this *801 total would be subtracted the items of expense described in Article III hereof leaving- a balance of which Stevens would receive fifty percent, this being his ownership interest in the assets of the laboratory. During the second year and thereafter as set forth in paragraph A through D of this Article II, Stevens’ percentage of the income from the Lake Charles Memorial and Lake Charles Charity Hospitals, would increase each year until 10/1/67.
“ARTICLE III.
“METHOD OF COMPUTING NET PROFIT AND NET LOSS”
“The net profit referred to in Article II hereinabove will be computed in the following manner:
“At the end of each calendar year the total fees collected by the partnership from all sources, (including any future expansion of the practice) will be determined, and from this amount will be subtracted all of the partnership expenses. The balance will be the net profit or loss.
“These partnership expenses will include but will not necessarily be limited to the following items of expense:
A. Salaries of technicians and secretaries
B. Office supplies
C. Postage
D. Utilities (gas, electricity and water)
E. Telephone and telegraph
F. Janitorial expense
G. Subscriptions
H. Repairs of assets
I. Travel expense (only when approved by both Cook and Stevens, and notwithstanding Cook’s final authority hereinafter expressed).
Business entertainment (only when approved by both Cook and Stevens, and notwithstanding Cook’s final authority hereinafter expressed) J-
K. Charitable contributions (only when approved by both Cook and Stevens, and notwithstanding Cook’s final authority hereinafter expressed.)
L. Audit expense (accounting and income tax returns)
M. Social Security Tax on employees
N. Income tax withheld from employees’ salaries.
O. Premiums for Malpractice and OL & T liability insurance covering both Cook, Stevens and the partnership with limits of $100/300,000 for each person injured.
P. Depreciation of any equipment purchased by the partnership after 10/1/64, but only when the purchase thereof has been approved by both Cook and Stevens, and notwithstanding Cook’s final authority hereinafter expressed; (it is understood that the equipment and other assets which are owned by Cook prior to 10/1/64, shall remain his property — Cook having contributed only their use to the partnership during the existence of the partnership — and Stevens shall acquire no interest therein unless by written agreement executed by Cook subsequent to the date of signing this partnership agreement. For income tax purposes, Cook shall be entitled to deduct. from his returns all of the depreciation attributable to the said equipment and other assets owned by him prior to 10/1/64. Of course, if subsequent to 10/1/64, Cook should acquire additional equipment with Cook’s funds alone, then Cook will be the sole owner thereof, and *802 Stevens shall have no interest therein, this being true even if Cook allows the partnership to use this new equipment. This same rule will be applicable to any equipment belonging exclusively to Stevens, which is used by the partnership.)
Q. Office rent.
“ . . . ARTICLE VIII.
“TERMINATION”
“A. This partnership may be terminated at any time during any year, at the will of either party, with or without any cause whatsoever, but ninety days advance written notice of intent to terminate shall be a condition precedent to termination. This notice shall be complete upon its being mailed properly addressed to the addressee’s residence address, postage prepaid. Actual receipt of this notice by the addressee shall not be necessary.
B. Stevens will not acquire any ownership interest in the assets of the partnership except by written modification of this agreement, and if this partnership is terminated with or without cause before such modification, all of the partnership assets, the pathology practice, and any future expansion thereof will belong exclusively to Cook, and Stevens will share his applicable percentage of the net profits or net losses for the accrued portion of the then running calendar year to date of termination. Cook will share his applicable percentage of the net profits or net losses for such accrued period.
C. If at the termination of this partnership Stevens shall have acquired by written agreement a percentage of the ownership of assets being used by the partnership, either by purchase from Cook or by joint purchase by Cook and Stevens for the partnership, then some mutually satisfactory disposition of these assets will have to be made.
If the parties ca,nnot agree, then these items will be put up for public sale through an action of partition under Louisiana law, and each partner will receive his proper percentage of the net proceeds. * * * ”
The remaining articles of the partnership provide for monthly withdrawals by each party, authority on matters of policy and management of the practice, requirements of each party to carry automobile liability insurance, provisions for holidays and the like.
The partnership prospered and during its existence the net profit of each doctor was computed at the end of each calendar year on the basis of the fees actually collected by the partnership in conformance with Article III of the agreement quoted above. When the agreement was terminated by mutual consent as of September 9, 1968 the partnership assets consisted of 1) an automobile and a few items of office equipment acquired during the existence of the agreement, 2) a small amount of cash, and 3) Thirty-Seven-Thousand Three Hundred Fifty-Eight and 49/100 ($37,358.49) Dollars in accounts receivable. Dr. Stevens accepted a check in the sum of Three Thousand Four Hundred Sixty-Seven and 23/100 ($3,467.23) Dollars in settlement of his share of the fees actually collected from January 1, 1968 to September 9, 1968 but soon thereafter he filed the instant suit.
The trial judge, for reasons shown hereafter, held that there was no partnership between the parties and consequently held that plaintiff had no interest in the accounts receivable. He correctly held that the accounts receivable are assets but erroneously concluded that these receivables became the property of the defendant Dr. Cook in view of the provisions of Article VIII B of the parties’ agreement. He also held that since the automobile and certain equipment acquired during the existence of the agreement was secured with the joint funds of the two physicians that they are owners in indivisión in the proportion of one-half each, and the judgment ordered the parti *803 tion by licitation of this property. The defendant Dr. Cook has not answered the appeal seeking modification of this portion of the judgment and thus the sole issue on appeal is the disposition of the accounts receivable.
We will first address ourselves to the question of whether there was a partnership.
The Civil Code and the jurisprudence have set out several things which are necessary to a business relationship before it can be considered a partnership as between the parties to it. Our Supreme Court, in the case of Darden v. Cox, 240 La. 310, 123 So. 2d 68 set out these requirements as follows:
1) The parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry furnished to the business in determined proportions by them.
2) All parties must share in the losses as well as the profits of the venture.
3) The property or stock of the enterprise must form a community of goods in which each party has a proprietary interest.
The Darden case also states that even if the parties call their relationship a partnership, and agree that they give their mutual consent to form it, it will not be considered a partnership, as between the parties unless it is evident that the other two factors result from their agreement.
We believe that the trial judge erred in not finding a partnership. In our opinion the three requirements necessary to a business relationship before it can be considered a partnership, are present in this case. The mutual consent of Drs. Stevens and Cook to form a partnership is patent from the articles of partnership executed by them. The agreement itself refers to the contract as a partnership. Both parties, too, as evidenced by the pleadings, briefs, and testimony in the record, show unequivocally that their association was a partnership and was mutually consented to by them. Further the contract itself provides for a mutual participation in the profits of the venture and also in the losses. Such being the case, was the third requirement present, i. e., did the property of the enterprise form a community of goods in which each party has a proprietary interest? Contrary to the conclusion of the trial judge, we answer this in the affirmative.
The articles executed on August 18, 1964 did not bind either party to transfer the ownership of any money or other property as a contribution to the capital of the enterprise. In fact, neither party made any contribution to capital from his individual assets during the existence of their relationship. Instead, Dr. Cook agreed to furnish the use of certain of his individual assets and each party agreed to devote his full working time and perform, as nearly as feasible, SO percent of the work of the partnership.
LSA-C.C. Art. 2809 declares:
“Property, credit, skill and industry being the sources from which the profits of a partnership may be drawn, each of the partners may furnish either or all of these, in such proportions as they may mutually agree.” (Emphasis ours.)
Hence, a contribution to capital in money or other property is not necessary in order for the business relationship to be a partnership. However, the articles provided for a capital build-up in the form of cash to be retained as operating capital. Article IV provides:
“PARTNERS’ WITHDRAWALS
“Each month, after consulting with Stevens, Cook shall determine a reasonable amount of cash to be withdrawn by the partners; and each month, each partner will be paid his proper percentage of this withdrawal. At the end of each calendar year, if there is a net profit and cash on hand, Cook, after consulting *804 with Stevens, shall determine how much cash, in addition to previous monthly withdrawals, may be reasonably withdrawn by the partners.”
Moreover Article III P contemplated that equipment would be acquired by the firm.
Exhibit P-4 which is a financial data account of the partnership from its inception, fails to show accounts receivable, inasmuch as under the cash basis method of accounting stipulated in Article III and consistently followed in keeping the books, fees earned were not entered on the books as assets nor taken into profit until collected in cash. Therefore, the accounts receivable, although assets, are without a book value under this system of bookkeeping.
Exhibit P-4 further shows that, as stipulated by Article II of the written agreement, Dr. Stevens’ capital account received appropriate credits in each fiscal year for his share of the net income, and that as contemplated by Article IV, Stevens was permitted to withdraw cash from the assets, and Cook also let a portion of Stevens’ share of the yearly profit remain in the business without setting it aside in a separate drawing account. Thus, the interest build-up from undistributed profits qualifies as a proprietary interest essential to a partnership relationship.
Presumably, under Article I, inasmuch as defendant Cook contributed to the partnership the use but not the ownership of his then present practice of pathology and of those fixed assets used in his practice at the time of the inception of the agreement, the sharing of profits and losses under Article II gave Dr. Cook a greater interest through October 1, 1967 at which time Cook and Stevens were to and did begin sharing the profits and losses equally.
This leads us to the question of whether or not Article VIII B authorizes defendant Cook to have sole proprietorship of the accounts receivable. A reading of the contract of partnership and the construction placed on the agreement by both parties indicates that the term “partnership assets” as used in Article VIII B does not mean cash, equipment, and fees earned but not collected which had been generated by and belonged to the partnership. Considering that the written agreement abounds with references to Dr. Cook’s individual assets and the necessity of a written agreement for Stevens to acquire an interest in such assets, our reading of the preamble of the agreement with Articles I, III P and VIII B lead us to the conclusion that the as'sets referred to in Article VIII B refer to the assets owned by defendant Cook at the time that the agreement was entered into and which were brought into the partnership, for its use, and do not refer to any assets, including accounts receivable, which were generated by the joint participation of the parties or purchased with partnership funds. In reaching this conclusion we are not unmindful that since Dr. Cook’s attorney prepared the contract, the ambiguities, if any, are to be construed against defendant Cook. LSA-C.C. Articles 1950, 1957, 1958; Darden v. Cox, supra.
It cannot be denied that Dr. Stevens, through his services as a physician, contributed a full share to the accumulation of the fees earned by Cook and Stevens. In addition to his services, the profits from the period January 1, 1968 to September 9, 1968 were charged with expenses attributable to the earnings of these fees. In view of the partnership agreement and the method of operation conducted by the partners, can it logically be said that if the accounts receivable would have been collected prior to the termination of the partnership that Dr. Stevens would not have been entitled to his proportionate share of same? The answer is obvious.
As indicated above the contract (Article VIII B) literally states that upon termination all partnership assets shall belong to Dr. Cook and it also states, “ * * * and Stevens will share his applicable percentage of the net profits or net losses for the accrued portion of the then running calendar *805 year to date of termination. Cook will share his applicable percentage of the net profits or net losses for such accrued period.” If, in fact, all partnership assets were intended to and did belong to Dr. Cook there would, of course, have been no need to provide that he would also be entitled to his applicable percentage of profit for the period. Moreover, in the event the fees earned but not collected are to be disregarded in computing the profit for the final period because the uncollected fees are not taken into income under the cash method of accounting, then we cannot regard the uncollected fees as assets of the partnership.
In view of the foregoing, it is our conclusion that the assets referred to in Article VIII B pertain only to the assets brought into the partnership at its inception as shown in Article I and that Dr. Stevens is entitled to his share of the uncollected fees earned by the enterprise. Therefore the portion of the trial court’s judgment denying plaintiff’s claim in the accounts receivable is reversed and this cause is remanded to the trial court for the purpose of determining the issues relating to a full accounting and settlement consistent with the views herein expressed, which should include a determination of the allowance to Dr. Cook for collection expenses and for any interest calculations which may be due by him under LSA-C.C. Articles 2858 or 3015. Costs of this appeal are to be paid by defendant appellee Dr. Cook; taxation of other costs is deferred until final determination of the case.
Reversed and remanded.