CULPEPPER, Judge
(dissenting).
I cannot agree that a partnership existed under the written agreement between the parties. In Darden v. Cox, 240 La. 310, 123 So.2d 68 (1960) our Supreme Court held:
“The Civil Code and the jurisprudence set out several things which are necessary to a business relationship before it can be considered a partnership as between the parties to it. First, the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them. Arts. 2801, 2805 of the Civil Code; Labat v. Labat, 232 La. 627, 95 So.2d 129. Secondly, all parties must share in the losses as well as the profits of the venture. Art. 2814 of the Civil Code; Amacker v. Kent, 144 La. 545, 80 So. 717. Thirdly, the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest. Art. 2808 of the Civil Code; Belden v. Read & Hunt, 27 La.Ann. 103; Chaffraix & Agard v. Lafitte & Co., 30 La.Ann. 631; Shushan Bros. & Co. v. Drennan & Hillcoat, 158 La. 480, 104 So. 214. Even if the parties call their relationship a partnership, and agree that they gave their mutual consent to form it, it will not be considered a partnership, as between the parties, unless it is evident that the other two factors result from their agreement.”
Applying the law of the Darden case to the facts of the present suit, the first two essential elements are present, i. e., the parties consented to form a partnership and agreed to share the profits and losses. However, the third essential is lacking. The pertinent portion of Article VIII, paragraph B of the agreement, quoted above, expressly states: “Stevens will not acquire any ownership interest in the assets of the partnership except by written modification of this agreement (which was never done), and if this partnership is terminated with or without cause before such modification, all of the partnership assets, the pathology practice, and any future expansion thereof will belong exclusively to Cook * * (Emphasis supplied.) This clear and unambiguous language negates the formation of a community of assets in which each party has a proprietary interest.
*806 Of course, the accounts receivable are “assets” and the agreement expressly provides that upon its termination all of the “partnership assets” go to Dr. Cook. Hence, Cook owns all of the accounts receivable.
Plaintiff concedes that a literal construction of the last quoted portion of the contract is that upon termination all partnership assets, including accounts receivable, belong to Dr. Cook. However, he contends the true intention of the parties was to provide that Dr. Cook retain ownership of only those assets which he brought into the “partnership”. Stevens says the parties intended that all assets acquired during the partnership would fall into a community of property, and that Cook’s attorney, who drew the contract, inadvertently used the words “partnership assets” where he intended to state “Cook’s assets.”
I cannot agree that we should change the entire meaning of this contract by assuming that Cook’s attorney inadvertently used the wrong words in drafting the instruments. In my view, both the language of the contract and the intent and purpose of the parties is clear. Dr. Cook owned a large and successful pathology practice, together with a laboratory, equipment, medical records, contracts with hospitals, reputation and goodwill, and all of the other assets of such a business. He needed another doctor to help him and was willing to pay Dr. Stevens generously but Cook wanted it clearly understood that if Stevens left, the practice and any expansion thereof and all of the assets would belong to Cook. The agreement expressly states that in the event of termination “all of the partnership assets, the pathology practice, and any future expansion thereof will belong exclusively to Cook.” This language seems perfectly clear to me.
The conclusion reached by the majority is based largely on the equitably consideration that one-half of these accounts receivable were earned by Dr. Stevens and hence should go to him. In my view, these equitable considerations cannot prevail over the clear and unambiguous language of the contract, which is the law between the parties. However, if equity is to be a factor, we must also consider the circumstance that Dr. Stevens profited greatly from the practice which Dr. Cook had already established.
The issue in the present case is accounts receivable. But suppose the issue was new contracts with other hospitals, the accumulated medical records, goodwill, etc. How could it be argued, under the plain language of Article VIII, paragraph B, quoted above, that when Dr. Stevens left he was entitled to take with him one-half of any expansion of this pathology practice.
For the reasons assigned, I respectfully dissent.
Rehearing denied.
CULPEPPER, J. votes for rehearing for the reasons stated in his dissent.