95 So.2d 129

**Mrs. Cecelia GUYOT, Widow of Emile LABAT,**

**v.**

**Emile LABAT, Jr.**

No. 43002.

April 1, 1957.

Rehearing Denied May 6, 1957.

Byrnes & Wallace, New Orleans, for appellant.

Walter G. Wedig, Harold H. Wedig, New Orleans, for appellee.

HAWTHORNE, Justice.

Mrs. Cecelia Guyot, widow of Emile Labat, instituted these proceedings against her son, Emile Labat, Jr., seeking to be recognized as the owner of a business known as the Emile Labat Funeral Home, alleging that this business was her separate property acquired by her by inheritance. She also sought an accounting from the defendant from the date of her husband's death in 1946, and on the basis of this accounting she prayed for a money judgment in the sum of $119,622.36.

After trial on the merits the trial judge found that the Emile Labat Funeral Home had been conducted since plaintiff's husband's death as a partnership composed of the plaintiff and her son and was owned in indivision by the litigants in the proportion of an undivided one-half interest to each. He therefore dismissed plaintiff's suit as of non-suit, so that, according to his reasons for judgment, plaintiff could later, if she desired, file a suit for liquidation of the partnership. Plaintiff has appealed.

Counsel for appellant concede that under the laws of this state there must be a liquidation of a partnership before one partner can seek an accounting from another. This is a well-settled principle of law. See Jeffries v. Moore, 219 La. 692, 53 So.2d 898. However, counsel strenuously urge that the district judge erred in finding that a partnership existed between appellant and her son in the conduct of the Emile Labat Funeral Home. Counsel further contend that the proof was sufficient for a finding that the business was appellant's separate property.

In 1908 appellant acquired by donation mortis causa from her aunt, among other things, real estate at 1300 North Rampart Street, in New Orleans, from which the Ray Funeral Home had been conducted and also certain movable property used in that funeral business such as caskets, horses, carriages, etc. Shortly afterwards appellant's husband, Emile Labat, began to operate at 1300 North Rampart Street a

funeral parlor in his own name styled Emile Labat Funeral Home. This business was conducted solely and exclusively by appellant's husband and was entirely under his management. About five years later, in 1913, appellant sold the real estate on Rampart Street from which the business was being conducted, and some time later she and her husband moved both their residence and the business to 1615 St. Philip Street. In 1923 the St. Philip Street property, where the business was then being operated and where the Labats lived, was purchased by the husband in his own name.

Emile Labat died in 1946, and on the petition of appellant and her son appellant was recognized as the surviving spouse in community of the deceased and as such entitled to an undivided one-half interest in all of the community property left by him, and appellee, Emile Labat, Jr., was recognized as sole heir of his deceased father and entitled to the other one-half interest in the community property subject to the usufruct in favor of his mother. Among the community property listed on the inventory filed in the succession proceedings were the real estate at 1615 St. Philip Street and movables, such as caskets, hearses, and automobiles, which were obviously the stock in trade and equipment of the Emile Labat Funeral Home, and the judgment recognized the widow and the son as the owners, as set out above.

Shortly after the death of Emile Labat, Sr., Emile Labat, Jr., licensed embalmer and funeral director, took over the operation of the Emile Labat Funeral Home, and the business was still under his control and management and in his possession at the time the present suit was filed. Appellant alleges that her son had the exclusive control of the funeral business and collected all revenues and income from it. Accordingly she instituted this suit to be recognized as the owner of this business and for an accounting, etc., as already stated.

The first question we are called upon to decide is whether the business known as Emile Labat Funeral Home is the separate property of the appellant.

There is no question that the immovable property designated as 1300 North Rampart Street and the movable property used in conducting the Ray Funeral Home, all of which had been bequeathed to appellant, became her separate property. Art. 2334, La.Civ.Code. However, when her husband began the operation of the Emile Labat Funeral Home, in our view the old business known as Ray Funeral Home ceased to exist. The business known as the Emile Labat Funeral Home was conducted exclusively under the control and management of the husband as head and master of the community between him and his wife, and he continued to operate the business in this manner for 38 years, until his death in 1946.

Some few years after the husband started the Emile Labat Funeral Home, the wife sold the Rampart Street real estate as her separate property, but we do not know what disposition she made of the proceeds of this sale. When the husband died in 1946, the movables which had formerly been used in conducting the Ray Funeral Home, such as horses, carriages, etc., and which the wife had acquired 38 years before, because of their nature were no longer in existence. The husband conducted the Emile Labat Funeral Home at the St. Philip Street property, which he acquired in his own name, for about 33 years, and he was operating the business there when he died.

■ The trial judge was of the view that the Emile Labat Funeral Home was not the separate property of the wife but belonged to the community of acquets which existed between her and her deceased husband. This conclusion is correct. See Mehnert v. Dietrich, 36 La.Ann. 390; Werner v. Kelly, 9 La.Ann. 60.

The next issue to be decided is whether appellant and her son conducted the business as a partnership after the death of Emile Labat, Sr.

Article 2801 of the Civil Code defines partnership as a "synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties". Article 2805 states that "Partnerships must be created by the consent of the parties". Article 2806 provides that "A community of property does not of itself create a partnership, however that property may be acquired, whether by purchase, donation, accession, inheritance or prescription".

In Chaffraix v. Lafitte & Co., 30 La.Ann. 631, this court set up the following test to determine whether, in a given case, a partnership exists between the parties:

"The true, final, satisfactory, conclusive test is in the answer to the question: What was the real meaning and intention of the parties, as expressed in their contract, whether verbal or written? If they intended to create a partnership, they will be treated as partners *inter sese* and with respect to third persons: If they did not intend to create that relation, but merely to divide the profits, or to share profits and losses, in a speculation or adventure, they will not be partners *inter sese,* nor will they be liable as such."

In Collom v. Bruning, 49 La.Ann. 1257, 22 So. 744, 747, the following appeared:

"Partnership is a special contract, dependent for its creation upon the consent of the parties (Rev.Civ.Code, art. 2805) that that particular relation should be established between them. The mere fact

that two persons may both be interested pecuniarily in the same business venture, and that each gave to it equally his time and attention, by no manner of means carries with it as a matter of law, the conclusion that they stand towards each other as partners."

In Glover v. Mayer, 209 La. 599, 25 So. 2d 242, 244, this court quoted with approval from the Chaffraix and Collom cases and then stated:

"From the quoted observations it is clear that for persons to be considered as partners inter sese there must exist an intention to establish that relationship."

■ Appellee in support of his contention that a partnership existed between him and his mother points out that they lived together on the premises, that both had access to the business records, that they had joint bank accounts, that occupational licenses from the city and the state were issued to "Emile Labat, Jr. and Mrs. Emile Labat", and that they filed partnership income tax returns. All of these facts may be persuasive, but they are by no means conclusive. The real question is whether as between them there was an intention to establish a partnership. A reading of this record shows no indication that these two parties ever had any intention of entering into a partnership contract. Certainly appellant never consented to enter into such a partnership, and her son never treated her as a partner. What is

clear is that after the death of Emile Labat, Sr., the son assumed control of all the community property left by the father, collected the rents, and managed the funeral business as he saw fit.

We are of the view that the trial judge erred in finding that the mother and the son had been partners in the Emile Labat Funeral Home business since the death of Labat, Sr., and in dismissing the suit because there had to be a liquidation of such a partnership before an accounting could be sought.

It is our view that appellant is entitled to an accounting and to judgment on the same.

■ Appellee in brief filed in this court complains of certain rulings made by the trial judge in the court below, but since he did not appeal or answer the appeal, the matters of which he complains are not before us at this time.

The judgment appealed from dismissing the suit of Mrs. Cecelia Guyot Labat as of non-suit is reversed, annulled, and set aside, and the case is remanded to the district court for proceedings consistent with the views here expressed. All costs of this appeal are to be borne by appellee Emile Labat, Jr. All other costs are to await the final determination of the cause.

FOURNET, C. J., absent.

HAMLIN, J., recused.