McBRIDE, Judge.
The plaintiff sought by this suit against her son, Emile Labat, Jr., to be recognized and declared as the owner of the business known as the Emile Labat Funeral Home, alleging that the business was her separate property which she acquired by inheritance. She also prayed for an accounting from defendant from the date of her husband’s death in 1946, and on the basis of the accounting she claimed the right to a moneyed judgment in the sum of $119,622.36.
The case was tried on its merits, the trial judge finding that the Emile Labat Funeral Home since the plaintiff’s husband’s death had been conducted as a partnership by plaintiff and her son and was owned in in-división by them in the proportion of an undivided one-half interest to each. He dismissed plaintiff’s demands as of nonsuit on the ground that she was not entitled to an accounting from her son because under the law of Louisiana there must be a liquidation of the partnership before one partner may seek an accounting from another. The plaintiff appealed to the Supreme Court from this judgment.
The matter was decided by the Supreme Court; see 232 La. 627, 95 So.2d 129. It was the conclusion of the Supreme Court that the funeral home business was not the separate property of plaintiff but that it belonged to the community of acquets and gains which had existed between her and her deceased husband; that there was no partnership between the parties; that the plaintiff-appellant was entitled to an accounting from her son and to judgment on the same. In its decree the Supreme Court reversed the judgment of nonsuit against plaintiff and remanded the case to the district court for proceedings consistent with the views it expressed.
Subsequent to the remand the parties filed supplemental pleadings, and in due course the matter proceeded to trial in the district court, at which time all the testimony and evidence previously taken on the initial trial was made part of the record and the litigants adduced additional evidence.
At the conclusion of the trial on the remand, the trial judge was of the opinion that the cash amount due plaintiff from defendant and the funeral home business was $28,442.82 as of September 30, 1957, and judgment was rendered accordingly; the judgment made permanent the preliminary injunction which had been issued against defendant restraining him from disposing of, alienating or encumbering the property owned jointly by the plaintiff and himself; the $28,442.82 cash, composed of moneys resulting from the operation of the funeral home business and the proceeds of a certain sale of real estate in possession of defendant, was recognized as being owned by plaintiff and defendant in these proportions : to plaintiff an undivided one-half thereof in full ownership, together with the usufruct on the remaining one-half; to Emile Labat one-half in naked ownership subject to the usufruct of his mother; defendant was ordered to pay over said cash to plaintiff, together with legal interest thereon from May 6, 1957, until paid, and to deliver the assets of the business, both movable and immovable, together with all books and records of said business to plaintiff; plaintiff’s right to an accounting and judgment thereon from and after September 30, 1957, was reserved unto her.
Defendant appealed devolutively to the Supreme Court and plaintiff made answer thereto praying that the cash awarded to her be increased to the sum of $90,417.57 in accordance with the Pilie audit.
The matter now comes before this court for adjudication by virtue of the general transfer of appeals by the Supreme Court to the newly-constituted Courts of Appeal pursuant to the 1960 amendment of art. VII, § 30, Const. 1921, LSA.
*694 The contention of the appellant is that he was. a coproprietor of the funeral home business and a joint adventurer with his mother in the operation thereof and as such he is entitled to one-half of all the movable and immovable assets of the Emile Labat Funeral Home, including one-half of the $28,442.82 which the trial judge decreed should be delivered to plaintiff.
When the Supreme Court considered this matter on the first appeal (232 La. 627, 95 So.2d 129), it had before it the same evidence which the appellant now relies upon to support his claim there was a coproprie-torship or joint adventure relationship between himself and his mother, such as their living together on the premises, both having access to the business records, the fact of joint hank accounts, that occupational licenses from the city and the state were issued in the names of both parties, and that they filed partnership income tax returns.
It is a well-settled doctrine of our law that the relations between joint adventurers are assimilated to those of partners inter se and analogous rules govern. Ault & Wiborg Co. of Canada, Limited v. Carson Carbon Co., 181 La. 681, 160 So. 298; Daily States Pub. Co., Limited v. Uhalt, 169 La. 893, 126 So. 228.
If the evidence in the case had demonstrated there was a coproprietorship and joint venture, we are certain the Supreme Court would have so held, and its decree would have been different because no accounting would have been ordered in view of the fact that the business was un-liquidated. No accounting may be had between the partners before a liquidation of the partnership, and our opinion is there could be no accounting between joint adventurers until the venture comes to its termination. The same rule would govern joint ventures as governs' partnerships.
The trial court held that defendant was his mother’s agent in the management of the funeral home. Upon the death of the senior Labat the son assumed control of all community property left by the father and managed the business. It might be mentioned here he possessed a certificate as a registered embalmer while his mother possessed no such certificate. The evidence indicates that although he handled the business as he saw fit, he was after all his mother’s agent and the holding of the trial court was correct in that respect. The evidence reflects that defendant devoted his entire time and attention to the business of the funeral home and it goes without saying he was entitled to remuneration. However, there was no specific or express agreement ever made with reference to what salary or emolument would be paid for his services, but the evidence taken as a whole, particularly with reference to the manner in which the individual accounts of the parties were set up in the books, tends to bear out defendant’s contention. He was to receive one-half of the net profits accruing from the business. Unquestionably there was some tacit understanding to that effect as the yearly federal income tax returns made by the parties show they each returned as income one-half of the purported profits of the business.
The trial judge observed that the manner in which the books were kept over the eleven years the business was managed by defendant was “unbusinesslike and ambiguous,” and that plaintiff acquiesced in the manner of keeping the books. Although there were banking accounts, not all receipts of the business were deposited therein and in disbursing money defendant did so sometimes using undeposited cash and sometimes by issuing checks. Mr. Pilie in his report in connection with his examination of books and records pertaining to the business made the statement: “Many of the pages (of the books) were missing, including some significant portions of the ledger.” As has been stated, the parties lived in the premises which housed the funeral home, and a considerable aggregate sum of money was extracted from the business to defray their living expenses, and it appears .that some of such funds were. *695 charged to the individuals, hut much of it was charged to “merchandise,” it being said this was done for “tax purposes.” The record contains audits made by Mr. Shaw, an accountant, and Messrs. Verlan-der and Pilie, Certified Public Accountants. There is wide variation in the amounts which each of the three experts concluded should constitute the settlement between plaintiff and defendant, and in fairness to them this can be attributed to the chaotic condition of the books and records which defendant kept, which circumstance was acquiesced in by plaintiff. The profit of the business from January 1, 1946, to September 30, 1957, the period the accounting is to cover, as best we can calculate it from the conflicting statements, was the sum of $99,853.68, as shown by the Shaw profit and loss schedules. Defendant’s one-half thereof as salary would amount to $49,-926.84. However, the Shaw audit discloses that defendant withdrew from the business as “salary” $56,781.66, or $6,854.82 more than was due him. Since the Shaw balance sheet of September 30, 1957 (or any other balance sheet) carries no liability for unpaid salary to Emile Labat, Jr., it seems reasonable to assume that Mr. Shaw’s profit and loss statements comprehend that the $56,781.66 was paid him in cash. This was the view expressed by Mr. Pilie which sounds reasonable to us.
The trial court adopted as the basis for his judgment the Shaw account submitted on behalf of defendant, and we think, under the circumstances, such was proper. As stated, a wide divergence of opinion exists between Mr. Shaw and Mr. Pilie as to the amount to which plaintiff is entitled and Mr. Verlander, the third expert, was employed to reconcile their figures, but he was unable to do so. On November 12, 1957, in obedience to the order of the trial court that defendant make an accounting, he submitted the Shaw schedules and evidently plaintiff was satisfied with the profit and loss statements appearing therein because she, in a supplemental and amended petition, filed November 27, 1957, alleged “she desires and is entitled to a monetary judgment on said account to the extent of the amounts which petitioner does not dispute.” She never disputed the yearly profit and loss statements of Shaw, but, on the contrary, tabulated therefrom what she considered to be the amount due her and prayed for judgment accordingly.
The judgment rendered below correctly embraced- the amount of cash to which plaintiff is entitled as shown by the Shaw account. The only way a different amount could be arrived at is to say that the Shaw schedules are incorrect and adopt the findings of either Mr. Verlander or Mr. Pilie. If these three persons, skilled in the science of accountancy, cannot agree due to the loose and unscientific manner in which the financial records of the funeral home were maintained, how can we, as laymen, say with any degree of certainty or conviction that one audit is more worthy of acceptance than another? ,We have accepted the Shaw schedules because the trial judge did so after having seen and heard the experts give their testimony and also because plaintiff herself accepted Shaw’s profit and loss statements. The amount of cash defendant must return to plaintiff must be increased by the sum of $6,854.82, the overdraft in his salary account.
There is no merit in defendant’s contention that he is entitled to one-half of the assets of the business because of the alleged relationship of coproprietorship and joint adventurers said to have existed between himself and’his mother. While defendant is entitled to his naked ownership of one-half the assets of his father’s estate, he has no claim or right to any interest in the equipment which was acquired by the business over the eleven-year period because he was only his mother’s employee and she became the owner of such accretion in the assets.
Appellee maintains she is entitled to hav-e legal interest on the amount accruing each year from the year it accrued. Even if this would be the proper way to *696 award legal interest, it would be impossible for us to compute the amount which became due plaintiff yearly due to the confused condition of the records. We are at a loss to determine why or how the trial judge decreed that the interest should run from May 6, 1957. We think in view of the circumstances of the case, defendant should be cast for legal interest from judicial demand.
It is ordered, adjudged and decreed that the judgment appealed from be amended so as to show the amount of the cash Emile Labat is condemned to pay over to Mrs. Cecilia Guyot Labat is $35,297.64 rather than $28,442.82, and the same is to bear interest at the legal rate from judicial demand until paid rather than from May 6, 1957, and as thus amended and in all other respects the judgment is affirmed.
Amended and affirmed.