457 So.2d 101 (1984)
Glenna C. GLOVER
v.
Milton J. SOWADA.
No. 83-CA-763.
Court of Appeal of Louisiana, Fifth Circuit.
September 25, 1984.
Rehearing Denied October 17, 1984.
Writ Denied December 7, 1984.
*102 William B. Birner, Daniel E. Becnel, Jr., Reserve, Becnel, Landry & Becnel, LaPlace, for plaintiff-appellee.
Ronald J. Landry, Law Office of Ronald J. Landry, LaPlace, for defendant-appellant.
Before CHEHARDY, KLIEBERT and GRISBAUM, JJ.
KLIEBERT, Judge.
The plaintiff, Glenna C. Glover, sued her former boy friend, Milton J. Sowada, defendant, to recover an alleged indebtedness of $40,000.00 from him. The suit was coupled with a request for the issuance of a temporary restraining order, without bond, prohibiting defendant from disposing of any assets or inventory of a business known as S & S Vans. The restraining order was granted without bond and expired without a hearing on or the granting of a temporary injunction.
Plaintiff's pleadings alleged an indebtedness arising out of the liquidation of S & S Vans. The defendant filed an exception of vagueness predicated on the lack of specifics as to the business relationship alleged by the plaintiff. After defendant's exception of vagueness was denied, he filed an answer denying the existence of any business agreement and reconvened for damages for the improvident issuances of a restraining order. After the introduction of evidence, plaintiff's suit was urged as though it was one to establish the existence of a partnership coupled with a demand for one-half of the value of its assets at the time the litigants' relationship terminated.
Following a trial on the merits, the judge made the following specific findings:
(1) The parties were the principals of a business partnership known as S & S Vans by mutual assent;
(2) The business known as S & S Vans began operations sometime in 1976 and ceased operations by mutual assent sometine in early-1980; and,
(3) The plaintiff, Glenna C. Glover, is entitled to a 50% share of the business liquidated as S & S Vans.
Then, concluding the tools and inventory of S & S Vans sold for $27,500.00 and that defendant had converted $30,000.00 in savings to his own use, he found the assets of S & S Vans at the time plaintiff ceased working there were valued at $57,500.00. From this, he deducted an estimated $5,088.33 for losses during the portion of the year 1980 the litigants worked together, and rendered judgment in favor of the plaintiff and against defendant for one-half of the balance or $26,205.84 (as corrected by the amended judgment of April 7, 1983).
The defendant timely brought this devolutive appeal urging error by the trial judge in (1) concluding the litigants had entered into a contract of partnership, and (2) in calculating the amount owed to the plaintiff. The plaintiff neither appealed or answered the defendant's appeal. For the reasons hereafter stated, we reverse the judgment of the trial court.
In his reasons for judgment, the trial judge found the parties mutually assented to combine their talents toward a definite purpose; i.e., the purchase, conversion and sale of vans under the trade name S & S Vans, and based his conclusion on the following factual findings:
(1) The parties deposited 50% of the income of S & S Vans into a checking *103 account at a bank where plaintiff formerly banked (Bank of St. John) and 50% where defendant formerly banked (Riverlands National Bank);
(2) Both parties had free access to these funds;
(3) The defendant continued to work a 40 hour week for a utility company and customized vans only at night and on weekends, while the plaintiff quit her former job to devote full time to their mutual purpose;
(4) A short time after the business commenced, the defendant moved into the residence with the plaintiff and shared the home with her mother, father and children, with the work being performed at the house.
Then, citing Tilly v. Cook County, 103 U.S. 155, 26 L.Ed. 374 (1880), to support the legal principle that the parties had a valid contract where (1) they were competent and there is (2) mutual assent, (3) consideration, and (4) a valid subject matter, he concluded the parties had agreed to form an oral partnership.
Although we fully agree with the cited law, it is not the proper law to apply in deciding whether the litigants had formed a partnership in this case.
Of the four types of partnerships provided for by Louisiana law,[1] all must be evidenced by a written contract, except that of a commercial partnership. The litigants here agree there was no written partnership agreement; hence, the only partnership which could have existed between the parties, if any would have been a commercial partnership. LSA-C.C. Article 2852. Foshee v. Simkin, 174 So.2d 915 (1st Cir.1965); Schwegmann v. Schwegmann, 441 So.2d 316 (5th Cir.1983), writ denied 443 So.2d 1122, ___ U.S. ___, 104 S.Ct. 2389, 81 L.Ed.2d 347.
The supreme court, in Darden v. Cox, 240 La. 310, 123 So.2d 68 (1960), at page 71, set out the prerequisites for establishing an oral commercial partnership agreement as follows:
"The Civil Code and the jurisprudence set out several things which are necessary to a business relationship before it can be considered a partnership as between the parties to it. First, the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them. Arts. 2801, 2805 of the Civil Code; Labat v. Labat, 232 La. 627, 95 So.2d 129. Secondly, all parties must share in the losses as well as the profits of the venture. Art. 2814 of the Civil Code; Amacker v. Kent, 144 La. 545, 80 So. 717. Thirdly, the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest. Art. 2808 of the Civil Code; Belden v. Read & Hunt, 27 La.Ann. 103; Chaffraix & Agard v. Lafitte & Co., 30 La. Ann. 631; Shushan Bros. & Co. v. Drennan & Hillcoat, 158 La. 480, 104 So. 214. Even if the parties call their relationship a partnership, and agree that they gave their mutual consent to form it, it will not be considered a partnership, as between the parties, unless it is evident that the other two factors result from their agreement. In the case of Amacker v. Kent, supra [144 La. 545, 80 So. 720], this Court held on this subject as follows:
`If it be found that they have agreed upon all those matters which, in law, constitute a contract of partnership, it must be presumed that they intended that contract. If, on the other hand, some essential element to that contract is omitted, it is not a contract of partnership, *104 no matter what it may be called.'"
Thus, for the plaintiff to establish the existence of a partnership she has the burden of showing: (1) she and the defendant mutually agreed to form a partnership to participate in the profits which would accrue from the property, skill and industry furnished to the business in determined proportions by them, (2) both agreed to share in the losses as well as the profits of the venture, and (3) the property or stock of the enterprise formed a community of goods in which each party has a proprietary interest. Under our law, as it then existed, in the absence of any one of these factors, there could be no partnership.
The following facts are virtually undisputed by the litigants. The plaintiff and defendant were both residents of Gretna and met there in 1975. Sometime thereafter, the defendant, who was a full time employee of a utility company, commenced a business at his home in Gretna, Louisiana, operating under the trade name S & S Van Accessories.
Sometime in early 1976 the business, using the trade name, S & S Van Accessories,[2] commenced operating from the home of plaintiff's parents at 1713 Ellerslie Avenue in LaPlace, Louisiana. The business consisted of selling, at retail, parts and accessories needed to customize vans and the purchasing of stripped-down vans from automobile dealers, customizing same and re-selling them as customized vans. The parties began working together in the business in early 1976 and terminated their relationship in April 1980.[3]
As to his business relationship with the plaintiff, the defendant testified that he owned the business operated under the trade name "S & S Vans" and that the plaintiff was his girl friend who helped him with the business by doing most of the paper work and otherwise helping in any way she could, and in return had his authority to spend on herself and her children any of the funds belonging to S & S Vans.
In contrast, the plaintiff testified that their business relationship was as follows:
"Q. When you and he began running the business out of your parents' home, what was the agreement between you and he?
A. Originally, it was going to be a partnership because I would be working all during the day while he was working elsewhere, and originally all of the money or monies that were had went back into the business. But the business started showing a profit and we split the business up, it was fifty-fifty (50-50). Inventory and assets were received and money collected each day, and we split that fifty-fifty (50-50), as well."
Thus, the difference in the respective position of the litigants arises from the lack of a predetermined agreement for the division of losses or profits or a definite agreement as to the nature of their business relationship. Both litigants agree they each contributed labor to the business in accordance with their abilities and/or the needs of the business. Further, both agree each was authorized to and did utilize funds generated from the business operations, but disagree as to the basis for the authorization. Counsel for the plaintiff contends his client's relationship with the defendant constituted a commercial partnership; whereas, the defendant's attorney denies such a relationship. Although both litigants acknowledge residing in plaintiff's parents' home and the attorneys for each litigant intimate the existence of an overlying sexual relationship, both litigants deny such a relationship existed.
A prerequisite to establishing a partnership is the intent of both parties that there be a business relationship between *105 the parties and the relationship has all of the major characteristics of a partnership. Darden v. Cox, supra. The plaintiff has failed to show this requisite intent.
According to the sales tax registration certificate dated April 23, 1979 (placed in evidence by joint stipulation of the parties) the business was registered in the name of Milton J. Sowada, doing business as S & S Van Accessories, with addresses of P.O. Box 1556 Oakwood Drive, Gretna, La., and 1713 Ellerslie Avenue, LaPlace, La. Consistent with the registration of the business as a sole proprietorship, the income and losses from the business were reported by the defendant on his individual tax returns for the years 1976, 1977, 1978, 1979 and 1980. Contrary to the findings of the trial court of a $500,000.00 profit, these returns showed the business sustained a loss from its operations in 1976 and 1980 which totalled $18,665.00 and a net profit in the other years which totalled $28,773.00.
Accounting records of the business were maintained by the plaintiff. Although the business records included receipt and disbursement ledgers, these ledgers do not indicate whether the disbursements were by cash or by check, nor do they indicate the disposition of the receipts, i.e., whether or not deposited in the business checking account. Further, it is impossible to determine gross or net profits from the accounting records submitted in evidence. The only evidence as to net profits is that reflected by the defendant's tax returns. The plaintiff filed no returns.
Thus, the documentary evidence contained in the record supports the defendant's contention the business was a sole proprietorship for it was so considered by both parties for sales tax registration purposes and for income tax purposes. Nevertheless, the plaintiff testified she was entitled to and did in fact share the profits and losses of the business equally with the defendant. In essence, her position was grounded in the contention the gross receipts and disbursements were allotted to each of them on a daily basis and adjusted daily by transfer of funds from one bank checking account to the other. The record does not support her position.
Introduced into evidence were bank statements and cancelled checks showing S & S Vans had two separate checking accounts; one at the Bank of St. John where plaintiff formerly banked and one at Riverlands National Bank where defendant formerly banked. When asked why there were two checking accounts, the plaintiff said:
"A. That was dividing the money. It was really my account and his account though both names were on it, my money went to St. John and his went to Riverlands National Bank. The reason both names were on the account was in the event something happened, one or the other for some reason and the business needed money from one or the other we would both have access. We were trusting friends and we had no problems of having both names on the account, though the money was as I said separately."
She contended the division was accomplished by maintaining a "separate log" not contained in the books and records introduced at trial.
After plaintiff had testified she divided the profits and losses on a daily basis, on cross-examination, when pressed as to how this division took place with respect to the taxes paid on the business operations reported along with his salary by the defendant on his individual tax returns, she said:
"Q. Now, back to the confusing part of the fifty-fifty (50-50) split. On direct examination you said that when taxes are due you paid Mr. Sowada for half of the taxes?
A. Yes.
Q. Do you have any receipts?
A. No, none at all.
Q. None at all?
A. No.
Q. Did you pay this in cash?

*106 A. That is possible, I don't recall. I would not have written a check say, with the footnote being `taxes'. I would just have written a check for him, were that the case, for the amount owed, which might incorporate more than the amount of the taxes or less; depending on what the records were at that time; if he owed me money for a shipment that was received. In other words say if we had a shipmentand this is just a situation that may or may not exist; but I'm just trying to tell you how it worked. Say the day that he paid $5,000.00 for the taxes which I owed $2500.00, I paid a $5,000.00 inventory that would have come in that day, then the record would have been even because then he owed me $2500.00 and I owed him $2500.00 and this is how it worked. If that is confusing, wellthe record keeping was done in a very lackadaisical or unethical, or whatever, and in just a very relaxed fashion and, you know, a bookkeeper I am not. Mr. Sowada is the one who set up the system and he told me how he wanted it done. He decided what receipts would be recorded and whatever, and I just did it.
Q. If you did make a payment to Mr. Sowada by check what checking account would you have used?
A. Probably, the Bank of St. John Account under S & S Vans, because again, though it has both names that was my account.
Q. Would you look through these checks and I think they are marked Glover 1 through 4 inglobo? Would you look in 1978 and see if you can find any checks paid out to Mr. Sowada?
A. I would not necessarily have made it to him, I might have made it to S & S Vans; which he would then deposit in his account at Riverlands Bank.
Q. Do you find a check to S & S Vans in there?
A. I don't see any.
Q. You don't see any?
A. No.
Q. I could probably have you look through the rest of them, do you think you will find a check to Mr. Sowada?
A. I don't know how, at the time it was just handled however, you know, you have to understand the way the business worked. It is not probable, though possible, that I wrote a check depending on how the records were at the timeand who owed who."
Thus, there was no per se determination of what constituted the business' net profits or losses other than the tax returns or a per se division of either, nor was the plaintiff able to explain how the division of the gross receipts and expenses effected a division of profits and losses.
The defendant testified several bank accounts were used because of a desire to develop a good business relationship with several banks and explained the reason for plaintiff's name being on the accounts which belonged to him as follows:
"Q. Why did you put her name on your business account if she was not part of the business?
A. So she could write checks if she had to. If inventory came in she would be able to pay for it and she was my girl friend at the time and spent money as needed."
In further support of his position, defendant introduced bank statements showing there was also a checking account in the name of S & S Vans at the Bank of the South in Gretna, Louisiana. Although not as active as the accounts with the LaPlace banks, the account was opened in 1977 and remained open until 1980, but only the defendant was authorized to sign the checks on the account.
The only other person who testified directly on the relationship was the plaintiff's *107 mother. She testified that the business was conducted from her home at 1713 Ellerslie Avenue in LaPlace, because the plaintiff's daughter needed constant attention due to brain damage; hence, plaintiff could not hold a regular job but could work in the van business while caring for the child at home. Then, in seeking to explain why the defendant did not pay expenses of the house (from which the business was being conducted) she said:
"Q. You never asked for it [the expenses]?
A. No, because my daughter was spending from the business, it was good business for her under the circumstances, and we had no complaints about the business." (Emphasis supplied)
From our review of the accounts at the LaPlace banks, it is apparent the accounts were not entirely business accounts of S & S Vans. Rather, co-mingled with the business deposits were the salary checks of the defendant. Further, a review of the accounts shows both parties drew from either account for non-personal expenditures. In essence, the accounts were no different than those of married couples who co-mingle funds from whatever source, separate or community, wages or business, and make disbursements from the accounts as funds are available and the needs arise, without regard to their source.
The defendant denied the plaintiff requested any portions of the bank accounts when their relationship terminated. Although she was aware the defendant continued to utilize those accounts for his personal use, the plaintiff made no effort to assert a claim until one year after the relationship terminated.
Although the litigants did have a business relationship, the relationship did not have all of the major characteristics of a partnership. The litigants did not mutually consent to form a partnership to participate in the profits in a predetermined proportion; nor does the evidence substantiate the plaintiff's contention that profits and losses were divided equally by the parties. The agreement to share in profits from an enterprise is not sufficient to create the status of a partnership; nor is the division of profits alone sufficient to create a commercial partnership. Fiesta Foods, Inc. v. Ogden, 159 So.2d 577 (1st Cir.1963); SAS Jaworsky v. LeBlanc, 239 So.2d 176 (3rd Cir.1970), writ denied 256 La. 911, 240 So.2d 373; Pennington v. Simmons, 138 So.2d 189 (1st Cir.1962); Terry v. Slidell Refrigerating and Heating, Inc., 271 So.2d 536 (1st Cir.1972).
The intent to share in the profits and losses must be expressed and should not be implied from the parties' conduct. Partnership by its nature is synallagmatic and reciprocal and assent to it must be expressed. LSA-C.C. Articles 1766 and 1801; Foshee v. Simkin, supra.
It is apparent the litigants had a personal relationship interwoven with a business relationship. The litigants shared in the funds generated by their business relationship. That, standing alone, is not sufficient to establish the existence of a commercial partnership. Neither has the plaintiff proven a profit-share agreement nor a net profit generated by the business which would entitle her to recover from the defendant.
For the reasons stated, therefore, the judgment of the trial court is reversed and the plaintiff's action is dismissed. Each party is to bear his own cost of the appeal.
REVERSED.
NOTES
[1] Title XI of Book III of the Louisiana Civil Code of 1970 entitled Of Partnership previously consisted of Article 2801 through 2890, was revised, amended and re-enacted by Acts of 1980, No. 150, effective January 1, 1981 and now consists of revised Articles 2801 through 2848. The business relationship involved here was terminated prior to this revision of the Code. Thus, the partnership law applicable to the case here is the one in effect prior to the revision of the Act 150 of 1980.
[2] The initial records submitted in evidence uses this name. Subsequently, the records and the parties refer to the business as "S & S Vans".
[3] The plaintiff testified she believed the termination was in the latter part of April while the defendant testified it was April 7, 1980.