784 So.2d 125 (2001)
Irma Gayle BUTLER
v.
Dr. E. Ward SUDDERTH and Marrero Surgicenter, Inc.
No. 00-CA-1950.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2001.
Rehearing Denied May 29, 2001.
*126 Thomas B. Calvert, Metairie, LA, Counsel for Irma Gayle Butler, Plaintiff-Appellant.
Franklin D. Beahm, Joseph E. Windmeyer, Jr., Beahm & Green, New Orleans, LA, Counsel for Michael Friley and John Schiro, Defendants-Appellees.
Panel composed of Judges CHEHARDY, SCHOTT, Pro Tempore and GULOTTA, Pro Tempore.
CHEHARDY, Judge.
This matter originated as a medical malpractice suit against Dr. E. Ward Sudderth and Marrero Surgicenter, Inc. for negligence in performance of abdominal surgery on plaintiff. Plaintiff appeals a judgment that discharged from liability other physicians whom plaintiff alleges were partners with Dr. Sudderth for purposes of medical malpractice liability. We affirm.
On May 5, 1989 plaintiff filed a claim under the Medical Malpractice Act (La. R.S. 40:1299.41, et seq.) arising out of surgery performed by Dr. E. Ward Sudderth on May 17, 1988. On May 11, 1989, she filed suit for damages in the event defendant should be determined not to be a covered health care provider under the Act. By letter dated May 8, 1989 the Commissioner of Insurance notified plaintiff's counsel that Sudderth was enrolled in the Patient's Compensation Fund and advised that the parties could proceed with a medical review panel.
On August 1, 1990 the medical review issued its opinion. Thereafter plaintiff's previously-filed complaint was served on defendants and the lawsuit proceeded through discovery.
On September 6, 1996 the Louisiana Patient's Compensation Fund (PCF) notified counsel for the parties that Sudderth was no longer a qualified health care provider entitled to the provisions of La. R.S. 40:1299.41 because he had failed to maintain *127 the required $125,000 security deposit with the PCF.
On September 4, 1997 plaintiff filed a supplemental and amended petition against Dr. Michael Friley and Dr. John Schiro, alleging that on April 17, 1987 they had entered into a de facto partnership with Dr. Sudderth in pledging a jointly-owned certificate of deposit to the PCF to qualify them as self-insured participants in the PCF and to provide them with the protection of the Medical Malpractice Act. Plaintiff asserted that on or about May 29, 1996 the certificate of deposit was withdrawn from the custody of the PCF and the funds comprising it were utilized to satisfy two judgments rendered against Sudderth. Plaintiff stated that although Friley and Schiro maintained their qualification as participants in the PCF by replenishing the withdrawn funds, that they refused to allow Sudderth to participate, and that Sudderth failed to replace the funds himself, resulting in loss of his coverage by the Medical Malpractice Act.
Plaintiff further asserted that Friley and Schiro are obligated for debts incurred by Sudderth during the existence of the partnership, that plaintiff is a third-party beneficiary of their agreement, and that they are equitably estopped from denying the existence of the partnership. Further, plaintiff alleged that Sudderth, Friley and Schiro conspired to perpetrate a fraud on the PCF, the PCF Oversight Board, and their patients by failing to inform them of the lack of compliance with the statutory requirement for qualifications.
In the same supplemental and amended petition plaintiff made a cross-claim against the PCF and the PCF Oversight Board, alleging they were negligent in failing to ascertain the sufficiency of the security posted by Sudderth and in allowing Sudderth, Friley and Schiro to maintain qualified health care provider status as self-insured providers when they did not meet the statutory requirement for self-insured status. Alternatively, she asserted that the PCF and PCF Oversight Board are equitably estopped from denying Sudderth's qualified health care provider status.
In answer Friley and Schiro asserted they were never in partnership of any kind with Sudderth, never held themselves out as being his partners, and never had anything to do with examination, diagnosis or treatment of plaintiff.
On April 20, 1998 the proceedings were stayed as to Sudderth as a result of his filing a petition for bankruptcy. Subsequently, on November 24, 1998 Sudderth filed an amended answer to plaintiffs petition, asserting the affirmative defense of discharge in bankruptcy, alleging that the obligation that is the basis of this suit was extinguished by his discharge in bankruptcy on May 6, 1998.
Thereafter plaintiff proceeded only against Friley, Schiro and the PCF. The matter was tried in a bench trial and taken under advisement. On June 20, 2000 the district court rendered judgment in favor of Friley, Schiro and the PCF Oversight Board, finding that the Medical Malpractice Act provides for termination of enrollment if a self-insured provider's deposit is diminished and not replaced within five days.
Plaintiff filed a timely motion for a new trial, asserting that the parties had agreed to a bifurcated trial in which the court first was to determine the existence of a de facto partnership between Sudderth, Friley and Schiro and, separately, whether plaintiffs claim was properly disqualified by the PCF. Plaintiff complained that the court had rendered judgment in favor of all the defendants without deciding the principal issue of whether there was a de *128 facto partnership among the physician defendants for the purpose of obtaining self-insurance with the Fund.
While the motion for new trial was pending the PCF Oversight Board was dismissed from the proceedings on joint motion with the plaintiff. The motion for new trial later was denied and plaintiff took a devolutive appeal.[1]
On appeal plaintiff makes the following assignments:
1. The district court erred in failing to find that the defendants, Dr. E. Ward Sudderth, Dr. Michael Friley and Dr. John Schiro, formed a partnership for the purpose of improperly obtaining qualified health care provider status as self-insured providers pursuant to La. R.S. 40:1299.42(E)(2);
2. A tribunal should not allow the defendants, Dr. E. Ward Sudderth, Dr. Michael Friley and Dr. John Schiro, who perpetuated [sic; perpetrated] a fraud on the Louisiana Patient's Compensation Fund Oversight Board, to benefit from their misconduct by allowing them to manipulate the self-insured posting requirement to the detriment of all medical malpractice victims who had claims pending against Dr. E. Ward Sudderth, Dr. Michael Friley and Dr. John Schiro's self-insurance bond.
The ultimate question is whether defendants Friley and Schiro (and/or the PCF) can be held liable for any damages caused to plaintiff by Sudderth.
Appellant contends that defendants Sudderth, Friley and Schiro were partners by operation of law as to plaintiff because they held themselves out as partners to the PCF in their applications for self-insurance status. Specifically, appellant asserts the evidence establishes that each of the three doctors designated the other two as partners in their applications for self-insurance with the PCF, thus enabling the three to post a joint certificate of deposit in the amount of $125,000.00 ($41,666.66 per physician) instead of each having to post $125,000.00 individually. Friley testified that the sole purpose of their representations was to obtain the benefit of self-insured status with the PCF.
Appellant contends that defendants are estopped from denying their partnership or joint venture status because they received commercial benefit, the PCF relied on their representations, and appellant and all other claimants sustained harm by depletion of the bond to pay two prior judgments against Sudderth, without its being replenished on behalf of Dr. Sudderth.
At trial Dr. Friley admitted that the sole purpose for the representation in his application that Sudderth and Schiro were his partners was to obtain self-insured status with the PCF. He denied ever having any business relationship with Schiro or Sudderth that involved sharing profits from 1988 through 1990 and admitted that by qualifying as a self-insured health care provider he gained the benefit of the medical review panel process and also receives a limitation of liability. He said he considered it "cheap insurance ." He stated that he and the other two doctors took turns paying tax on the interest earned by their joint certificate of deposit that was pledged to the PCF. Each of them had contributed *129 one-third of the amount of the certificate of deposit. After the original deposit was depleted to pay judgments against Sudderth, Friley and Schiro put up a new bond with only themselves named on it. They did not include Sudderth "because he reneged on the agreement that if you lost the bond you were supposed to replace it."
Friley stated further, "We got the idea of being jointly insured by following a pattern that we thought was the same thing as Ochsner, Tulane, LSU, Browne-McHardy, et cetera.... Those groups had one bond for everybody that worked for them and they paid an individual surcharge." However, Friley admitted, he did not practice medicine with Sudderth, although he did practice medicine with Schiro, who was Friley's employee. Friley stated that he listed Sudderth and Schiro as his partners on the PCF application because they were partners in the certificate of deposit that was the security. He considered his application comported with his obligation to provide truthful and accurate information to the PCF.
Friley denied he ever intended to be vicariously responsible to provide insurance for malpractice by Sudderth. He affirmed that he was never in a partnership in the practice of medicine with Sudderth and did not share expenses for his office, although they occasionally worked out of an office that was conjoined. Any money generated by his patient care went into his own bank account; he did not commingle his revenues with Sudderth's. He denied that he commingled his practice with Sudderth.
With respect to Marrero Surgicenter, Inc., Friley said it was an outpatient surgery facility owned by four stockholders, including Friley, Sudderth, Schiro and another doctor. Friley's medical practice was independent of Marrero Surgicenter, Inc.
Dr. Schiro testified he signed the application for self-insured status with the PCF and admitted that it stated that he was partners with Sudderth and Friley. He stated he did not know why the new self-insurance bond posted to cover Friley and himself did not include Sudderth. He stated he worked in the office and was paid a salary; he indicated he was unsure by whom he was employed. He said that Sudderth set up the self-insurance bond business. Schiro stated that he himself was in the office as an employee and had no responsibility for business decisions. He signed the document on Sudderth's instruction.
Schiro testified further that if there were a judgment entered against him he would have to pay it himself, without contribution from Friley or Sudderth. He admitted there was a history of claims against him that he had resolved by paying money from his own pocket. He denied ever being a partner with Sudderth in the practice of medicine.
Lorraine LeBlanc, an employee of the state Office of Risk Management, testified as a representative of the PCF. She admitted that the PCF relies on the truthfulness of the responses given by physicians applying for self-insured status. She stated that if physicians are part of a group, they can post one bond; if they become solo they each must either post a bond or go to a primary insurer. If the facts are found to be incorrect or fraudulent, then they risk being disqualified with the PCF and losing coverage through the PCF.[2] She stated that the PCF does not have authority to deny coverage to a self-insured provider who submits an application, provides an approved bond, and pays the applicable *130 surcharge. She testified that the PCF has no authority to impose any restrictions beyond those allowed by the rules and regulations. She also testified she was familiar with the placement of bonds by Tulane and Ochsner hospitals, which use one bond to cover all their doctors. Asked whether that made all the physicians under the bond partners, she said, "No."
Irma Gayle Butler, the plaintiff, testified that prior to conversations with her attorney, she had never heard of the Patient's Compensation Fund or PCF, nor was she aware of any rights, protections or limitations imposed by the PCF. She admitted she went to Dr. Sudderth "to have a tummy tuck done but through a hernia repair" that is, "he wrote it down as a hernia repair and he done closed it with a tummy tuck closure."[3] She admitted she did not go to Sudderth for a treatment of a hernia, that she had no symptoms of a hernia, and saw Sudderth only for a tummy tuck. She admitted she went to Sudderth because she had been told he could do a tummy tuck on her that would not cost her anything.
La. C.C. art. 2801 states, "A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit."
To establish the existence of a partnership without a written agreement, a plaintiff has the burden of proving that (1) the alleged partners mutually agreed to form a partnership and to participate in the profits which would accrue from the business in determined portions, (2) they agreed to share in the losses as well as the profits of the partnership, and (3) the property or stock of the enterprise formed a community of goods in which each party has a proprietary interest. Johnson v. Antoine, 98-1285, p. 3 (La.App. 5 Cir. 5/19/99), 735 So.2d 856, 858. The prerequisites for establishing a partnership are that the both parties intend to have a business relationship between them and that the relationship have all the major characteristics of a partnership. Glover v. Sowada, 457 So.2d 101, 104-105 (La.App. 5th Cir.1984), writ denied 461 So.2d 316 (La.1984).
In the case before us, the record establishes that Sudderth and Friley did not share either their income from their patients or the expenses of their individual practices and that they did not intend to do so. Schiro was an employee, although it is not clear by whom he was employed, and received a salary. There is no proof of the elements of partnership among the three doctors.
However, a partnership can be created by operation of law as to third parties on the ground of estoppel, even though the parties themselves may not have intended to form a partnership. Medline Industries, Inc. v. All-Med Supply & Equipment, 94 1504, p. 6 (La.App. 1 Cir. 4/7/95), 653 So.2d 830, 834. "Equitable estoppel, or `estoppel in pais,' can be defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance." Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975).
This theory, now often called "detrimental reliance," is codified in La. C.C. art. 1967, as follows in relevant part:

*131 A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to its detriment when the other party was reasonable in so relying.... Reliance on a gratuitous promise made without required formalities is not reasonable.
To recover when asserting a cause of action for detrimental reliance, a plaintiff must prove three elements: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. John Bailey Contractor, Inc. v. State DOTD, 439 So.2d 1055, 1059 (La. 1983).
Plaintiff contends that the defendants made the "representation by conduct or word" when they indicated they were partners in their applications for self-insured status with the PCF. Plaintiff argues they each obtained commercial benefit from that representation by becoming qualified health care providers under the Medical Malpractice Act, so that they were entitled to the limitation of liability thereunder, including limitation of damages[4] as well as the right to the medical review panel process. They also benefitted by combining their contributions to purchase the $125,000 .00 certificate of deposit, so that their individual contributions were one-third of that amount, saving each of them $83,333.34 he otherwise would have been required to post to obtain individual self-insured status.[5] Finally, plaintiff asserts, the PCF relied on these representations and plaintiff in turn relied to her harm on the representation that Sudderth was a properly-enrolled self-insured physician.
There is no evidence, however, to show that plaintiff relied on the representations of partnership made by the three defendants to the PCF. In fact, plaintiff was unaware of the existence of the PCF, Friley or Schiro. She failed to prove she relied on Sudderth's having partners.
At most the three defendants could be considered to be partners for the purpose of posting the $125,000.00 self-insurance deposit, because they all contributed equally to it, were at risk for the amounts they contributed, and suffered the loss of their contributions when the deposit was withdrawn to satisfy the prior claims against Sudderth. Nothing in the record would justify our extending Friley's and Schiro's liability beyond the amount they posted.
Plaintiff's problems derive from the unfortunate circumstance that Dr. Sudderth was able to discharge his debt to her in bankruptcy. As noted by Friley and Schiro in their brief on this appeal, plaintiff is left here in no different position than she would have been had each of the three doctors posted their own self-insurance bonds separately: the money posted for Dr. Sudderth would be exhausted and he having been declared a bankrupt, plaintiff would have no recourse against him and none against Friley or Schiro as separate qualified health care providers.
Any injustice that may stem from the ability of health care providers to combine in posting self-insurance deposits with the PCF under the Medical Malpractice Act must be addressed by the legislature rather than the courts.
For the foregoing reasons, the judgment is affirmed. Costs of the appeal are to be paid by the appellant.
AFFIRMED.
NOTES
[1] The motion for new trial was denied orally in open court on August 14, 2000. Plaintiff filed a motion for devolutive appeal, which was granted on August 17, 2000. The appeal was premature because the order was signed prior to rendition of a written judgment. However, the prematurity was cured by the September 13, 2000 signing of the judgment denying the motion for new trial. La. C.C.P. art. 2087(D).
[2] See La. R.S. 40:1299.45(A)(1).
[3] "Tummy tuck is the surgical procedure to remove excess skin and fat from the middle and lower abdomen and to tighten the muscles of the abdominal wall. It is also known as `abdominoplasty'." Plastic Surgery Network, Tummy Tuck (visited April 3, 2001) .
[4] See La. R.S. 40:1299.42(B)(1).
[5] See La. R.S. 40:1299.42(E).