MARION F. EDWARDS, Judge.
laThis appeal is taken from a district court judgment in favor of plaintiff/appel-lee, Yvonne Bradley, denying defen-danVappellant/intervenor, Anthony J. Johnson’s, request for attorney’s fees. We affirm.
In 2001, Johnson was appointed to represent Winter Joy Caldwell (“Winter”) regarding personal injuries that she suffered on January 3, 2001 at the hands of her foster parents. Winter was, at the time of her injury, a foster child of the State of Louisiana. Johnson filed suit against Winter’s foster parents Lorraine Carter and Anthony Riley, Brookhaven Homes of Louisiana (“Brookhaven”), and the State of Louisiana. The record indicates that Winter was adopted in December 2002 by Yvonne and Howard Bradley and that the family moved to Georgia at some point. However, Johnson continued to represent the child in the Louisiana proceedings with the apparent consent of Yvonne and Howard Bradley.
*548 | sOn September 28, 2004, the court granted judgment authorizing Johnson to settle the suit with regard to Brookhaven. In that same judgment, the court ordered payment to cover Johnson’s attorney’s fees and expenses in the amount of $249,750, which was, according to the judgment, 33.33 percent of the total amount of the settlement (of $750,000). After ordering payment of a Medicaid lien, the court ordered that the remainder of the settlement be placed in a trust established for this purpose. The State and the foster parents remained in the suit. In October 2004, the court granted a Motion for Summary Judgment finding the State, through the Department of Social Services, vicariously liable for the acts of the foster mother. Johnson and co-counsel, Charles D. Williams (“Williams”), represented Winter at this proceeding.
The next pleading in this designated record is a judgment granted in December 2004, confirming a preliminary default and finding the foster parents liable in solido. The record indicates that the State filed an Exception of No Right of Action, averring that, following the child’s adoption, Johnson was not the proper representative in the case. On June 30, 2005, judgment was rendered substituting Yvonne Bradley, Winter’s adoptive mother, as the proper party plaintiff and relieving Johnson of his appointment to represent Winter. Johnson filed a Motion for Leave to File Petition of Intervention for Attorney’s Lien Rights. Following trial on the intervention, the court denied Johnson’s request for additional attorney’s fees. It is from this judgment that the current appeal is taken.
At trial, the court held that the only relevant time period to consider additional attorney’s fees was from the date of the Brookhaven settlement, September 28, 2004, to June 30, 2005, when Johnson was discharged. Johnson presented an activity log indicating his actions in the case and an estimation of the hours he spent working on the matter. The log was compiled for trial purposes; |4Johnson stated that he had not maintained a contemporaneous record as he did not anticipate being in this situation. He reviewed his files and calendars, and reconstructed the chronicle. Johnson testified that, after the Brookha-ven settlement, he spent 362 hours on the case. During this period, he stated that he filed sixteen pleadings and made four court appearances. He obtained two “significant” judgments, confirming the default against the foster parents on the liability issue as well as the October 4 judgment finding the State vicariously liable. The bulk of the hours claimed were in January and June of 2005.
In January, the log shows that, in addition to various correspondence, Johnson filed a Motion for Summary Judgment with Incorporated Memorandum and Exhibits. Preparation for the motion included review of documents, research, and compilation of the motion. He did it alone, without help from co-counsel. On cross examination, he could not give a number for the hours he spent on research but estimated that he spent 104 hours that month on the motion. Correspondence admitted into evidence indicates there was some concern by the Georgia court about the trustee of Winter’s property and, in June 2005, Johnson filed a petition in Georgia to appoint a successor trustee. Johnson proffered letters written by him during 2005 regarding his attempts to clarify the situation with the trustee. In Louisiana, Johnson also filed an Opposition to the Exception of No Right of Action, an Opposition to a Motion for Substitution of Proper Party Plaintiff, and an Opposition to State’s Motion for Summary Judgment.
*549 Johnson testified that he didn’t work on any other cases in 2005 because he needed to devote his attention to the present matter. Also admitted into evidence was various correspondence, most of which predated the Brookhaven settlement. Johnson testified that co-counsel Williams was not working on the ease and that he was discharged. A letter to Williams dated January 4, 2005 supports that |Rtestimony. Subsequently, Williams was again engaged but, ultimately, Johnson discovered that Williams was involved in assisting Mrs. Bradley to draw money from the trust account; Johnson was concerned the money was being withdrawn in violation of the trust agreement, so Williams was again discharged.
Williams testified at trial that he did assist Johnson in preparing the Motion for Summary Judgment and that he did not imagine that Johnson could have spent more than forty hours on the matter. Mark Vezina testified on behalf of the State. He handled the case for the Attorney General’s Office beginning in January 2005. By February or March, he became aware of the adoption and filed the Exception of No Right of Action. He did not enter into any settlement negotiations with Johnson during his representation.
On appeal, Johnson urges that the judgment on appeal denying his request for additional attorney’s fees is a modification of the September 28, 2004 judgment, which had become final. As we appreciate the argument, Johnson urges that the 2004 judgment awarded him fees on a contingency fee basis and that failure to award him a contingency on the second settlement was a substantive change of the 2004 judgment. According to Johnson, the 2006 judgment completely contradicts the 2006 denial of attorney’s fees. He refers to Reasons for Judgment given by the trial court that are not included in the designated record.
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal, LSA-C.C.P. art. 2164, and may designate the record limiting it to such portions which he desires to constitute the record on appeal. LSA-C.C.P. art. 2128. The inadequacy of the record, if any, is imputable to the appellant.[1]
IfiAn appellate court is forbidden by the law and jurisprudence to consider evidence which is outside the record on appeal ... It is also well established that the appellate briefs of the parties are not part of the record on appeal, and this Court has no authority to consider, on appeal, facts referred to in appellate briefs if those facts are not in the record that is lodged in the appellate court.[2]
The 2006 judgment does not affect the 2004 award of attorney’s fees. It does not increase or decrease them and does not effect any substantive change whatsoever. This assignment of error is without merit.
Conspicuously absent from this record is any written contingency fee contract. Rule 1.5(c) of the Rules of Professional Conduct requires that contingency fee contracts be in writing. The record on appeal does not indicate the reasons that the trial court awarded a percentage of the settlement in the first judgment. However, it is clear that, without a written fee contract, Johnson cannot recover a contingency fee in the present case, for to do so would be a violation of Rule 1.5.
*550 Johnson also urges that the prior award of contingency fees is the “law of the case.” The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at the trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal in the same case.[3] Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.[4]
|7On the record, we cannot determine how the “law of the case” argument applies here. The earlier award of attorney’s fees in the present case is not, as Johnson implies, a ruling having “binding force” so as to implicate the subsequent judgment. The allocation of fees subsequent to September 28, 2004 is not addressed. This assignment of error is without merit.
Johnson next alleges that he relied to his detriment on the contingency fee award of the 2004 judgment. Johnson claims he did not have a written agreement in 2004, yet received fees awarded on a contingency basis. Thus, he urges that, despite the absence of a written agreement, he was entitled to believe any future fees from subsequent settlements or judgments would be paid likewise.
To recover when asserting a cause of action for detrimental reliance, a plaintiff must prove three elements: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one’s detriment because of the reliance.[5] We cannot opine on the reasons the trial court awarded fees as it did in 2004, as that matter is not before us. Even so, we are unable to construe that judgment as a “representation” by the court to induce Johnson to continue his work on a contingency basis. We fail to see how, in the absence of any required written contingency contract at any stage of these proceedings, Johnson may have justifiably relied to his detriment on the earlier judgment.
Citing Saucier v. Hayes,[6] Johnson urges that the contingency fee received by Yvonne Bradley’s lawyer should be apportioned between the two attorneys. Johnson avers that he is entitled to a 97 percent share of the contingency fee on the State settlement, and the available fee to be allocated between himself and Yvonne Bradley’s counsel is $160,000, or 40 percent of the settlement. We find Saucier 1 ¡/inapplicable as it involved a discharged attorney who had obtained a written contingency contract. Besides his own lack of such contract, Johnson admits in brief there was no evidence or testimony regarding the fee arrangement between Yvonne Bradley and her attorney. Therefore, this Court has no way of knowing what that agreement may have been, or what fees may have been collected.
*551 The trial court determined at the outset of the hearing that it would consider the factors of Rule 1.5(a):
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
It is clear that, following September 2004, Johnson did work on behalf of Winter, obtaining the summary judgment finding the State vicariously liable for the acts of the foster mother. He also continued to work on the trust problem in Georgia. However, he did not obtain the settlement with the State. There was testimony that he did not enter into settlement negotiations with the State’s attorney, who was retained in January 2004. We find it significant that Johnson’s appointment to represent Winter did not provide for a method of compensation or fee payment for any work done for her benefit. Further, although he filed the rule to enforce his attorney’s hen rights, he is not entitled to a lien or privilege for any |afees under LSA-R.S. 9:5001, as there was no “agreed upon fee,” or LSA-R.S. 37:218, as there was no written contract.
Based on the foregoing, we cannot say the trial court erred in denying Johnson’s request for additional attorney’s fees. The judgment is affirmed.

AFFIRMED.

. Olson v. Olson, 04-1137 (La.App. 5 Cir. 3/1/05), 900 So.2d 52.

. Olson, 900 So.2d at 52.

. Petition of Sewerage and. Water Bd. of New Orleans, 278 So.2d 81 (La.1973). See also, Day v. Campbell-Grosjean Roofing & Sheet Metal Carp., 260 La. 325, 256 So.2d 105 (1971).

. Id.

. Butler v. Sudderth, 00-1950 (La.App.5 Cir. 4/24/01), 784 So.2d 125, writ denied, 2001-1905 (La.10/5/01), 799 So.2d 485.

. 373 So.2d 102 (La.1979).